INLAND REAL ESTATE CORPORATION, Plaintiff and Counterdefendant and Third-Party Plaintiff-Appellant and Cross-Appellee, *v.* OAK PARK TRUST AND SAVINGS BANK, Trustee, *et al.*, Defendants (Hans Seifert *et al.*, Defendants and Counterplaintiffs-Appellees and Cross-Appellants; and Thomas C. Hynes, Cook County Assessor, *et al.*, Third-Party Defendants-Appellees).

First District (3d Division) No. 81—2531

Opinion filed December 14, 1983.—Modified on denial of rehearing October 15, 1984.

536

Theodore A. Shapero and Thomas F. Geselbracht, both of Rudnick & Wolfe, of Chicago, for appellant.

Joseph B. Platt, of Chicago, for appellees Hans Seifert, Eleonore Seifert, and Oak Park Trust and Savings Bank.

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey and Bruce R. Meckler, Assistant State's Attorneys, of counsel), for appellees Thomas C. Hynes and Edward J. Rosewell.

JUSTICE WHITE delivered the opinion of the court:

This case involves interests in real property located at 229 Marengo Street in Forest Park. In 1970, this land and a 63-unit apartment building located thereon were owned by Stanley K. DeFurgalski and Brenda DeFurgalski, his wife. On December 19, 1972, Stanley DeFurgalski entered into a written agreement with Dr. Hans Seifert and Ronald Rynes whereby DeFurgalski was to convey the property to Seifert and Rynes. The parties agree that the total value that Seifert and Rynes were to pay for the property was $915,000. Paragraph 12(a) of the agreement provided that DeFurgalski shall convey to Seifert and Rynes "good and marketable fee simple title, free and clear of all liens, encumbrances, restrictions, easements and leases of any nature whatsoever." Paragraph 5 of this agreement provided that DeFurgalski "represents and warrants that the 1971 Real Estate taxes [on the subject real estate] were $2,117.02." Other evidence in the record shows that the taxes for 1970 and 1972 were $2,081.50 and $2,196.34, respectively. On December 26, 1972, De-

Furgalski and his wife, Brenda, conveyed title to Seifert and Rynes by warranty deed. In partial payment for the real estate, on December 29, 1972, Seifert and Rynes executed a promissory note payable to bearer in the face amount of $105,000, payable over 15 years and bearing interest at the rate of 9% per annum. This note was secured by a trust deed on the subject property executed the same day, and a rider attached to the trust deed provided that it was a junior mortgage expressly subordinate to an earlier mortgage not involved in this appeal. Both the note and the trust deed expressly provided that Seifert and Rynes would not be personally liable under the note and that all sums due under the note would be payable only out of the real estate described in the trust deed. On January 20, 1973, Seifert, Rynes, and each of their wives transferred the property to the Oak Park Trust and Savings Bank, as land trustee under trust No. 6743, with Seifert and Rynes named as beneficiaries. Since April 1973, Katherine Sipal, as an officer of Sipal Realty, Inc., was in charge of management of the apartment building for and on behalf of Seifert and Rynes, and her duties included the payment of all mortgage payments, taxes and expenses in connection with the property.

On December 30, 1974, DeFurgalski sold and assigned to Inland Real Estate Corporation his interests in the $105,000 note. Payments by Sipal to Inland on the note and second mortgage, which began in March 1975 and continued for 53 consecutive months through July 1979, totalled $56,445. The payments ceased in August 1979.

On May 31, 1977, the county assessor sent to Sipal Realty a notice of his intention to back tax omitted assessments. The notice stated that the assessment against the real property involved herein was defective because the assessment of the building was omitted for the years 1970 through 1976 and that a hearing would be held on June 14, 1977, at the assessor's office. Neither Sipal Realty nor Seifert or Rynes appeared at the scheduled hearing. Subsequently, on April 5, 1978, J. Douglas Donnenfeld, an attorney for Sipal Realty, appeared at a hearing in the assessor's office. On October 16, 1978, the county assessor imposed back taxes, interest and penalties totalling $128,584.51 for the years 1970, 1971 and 1972.

As noted above, no payments were made on the note secured by the second mortgage after July 1979. On November 8, 1979, Inland filed its complaint to foreclose the second mortgage. The named defendants in this action included Oak Park Trust and Savings Bank, as trustee under trust No. 6743, Hans Seifert, Eleonore Seifert, Ronald Rynes, Sipal Realty, and First Savings and Loan Association of South Holland, the first mortgagee. On December 21, 1979, Oak

Park Trust and Savings Bank, Hans Seifert and Eleonore Seifert filed an answer to the complaint. The answer contained a "set-off and counterclaim," in which the bank and the Seiferts alleged that the back taxes for 1970 through 1972 were for years when the De-Furgalskis owned the building and claimed that they were entitled to set off the amount of the back taxes against the debt represented by the note and second mortgage. They also claimed that they were entitled to "repayment of all sums heretofor paid under said note to plaintiff herein [Inland] for and on behalf of the DeFurgalskis in amount sufficient to pay for balance of back taxes, interest, and attorney's fees incurred." The answer also contained a third-party claim by the bank and the Seiferts against Stanley DeFurgalski, which sought recovery in the amount of the back taxes. Ronald Rynes filed an answer which contained a counterclaim and a third-party claim similar to those of the bank and the Seiferts. On April 10, 1980, Sipal Realty, as agent for the Seiferts, paid back taxes, interest and penalties for the years 1970, 1971 and 1972 in the amount of $123,584.81, without protest.

On July 18, 1980, Inland filed its answer to the counterclaim of Rynes. Inland denied liability on the counterclaim and raised certain affirmative defenses.[1] Inland also filed a third-party action against the DeFurgalskis for the amount of any setoff or judgment obtained by the bank and the Seiferts against Inland.

On December 18, 1980, Inland filed a third-party complaint against Thomas C. Hynes, in his official capacity as Cook County assessor, and Edward J. Rosewell, in his official capacity as Cook County treasurer and collector. The complaint alleged: "Counterclaimants [Oak Park Trust and Savings Bank, as trustee, Hans Seifert, Eleonore Seifert and Ronald Rynes] and Inland, as subrogee, are entitled to return of all tax payments received by the Collector, as a result of the subject real estate being back-taxed for the years 1970, 1971 and 1972." The prayer for relief asked for judgment in favor of Inland and against the county defendants "for the amount of the tax payments, plus interest received, as a result of the subject real estate being back-taxed for the years 1970, 1971 and 1972."

Subsequently, the Seiferts moved for summary judgment in their favor and against Inland on Inland's complaint to foreclose and for

---

[1]Inland's brief states that it denied the counterclaim of the bank and the Seiferts and raised eight affirmative defenses. However, the citation to the record for this statement is to Inland's answer to Rynes' counterclaim. Since the counterclaims were similar, we will treat Inland's answer as an answer to the counterclaims of Rynes, the bank, and the Seiferts.

summary judgment in their favor and against Inland on their counterclaim for setoff. Inland also moved for summary judgment in its favor on its complaint to foreclose and for summary judgment in its favor on the Seiferts' counterclaim. In addition, the county defendants, Hynes and Rosewell, moved for summary judgment in the third-party action against them. Inland also filed a motion for summary judgment in its favor in this third-party action. In response to these motions, the circuit court entered the final judgment order from which this appeal is taken. The circuit court ruled as follows:

"(1) INLAND's motion for summary judgment and entry of a decree of foreclosure and sale against HANS and ELEONORE is denied, and INLAND's Complaint for Foreclosure is dismissed;

(2) HANS' and ELEONORE's motion for summary judgment against INLAND is granted and the Court adjudges that HANS and ELEONORE are entitled to set-off $128,584.51 against the balance of purchase price due under the trust deed and note. The lien of the subject trust deed is void and cancelled of record;

(3) Judgment in favor of HANS and ELEONORE is entered against INLAND for $23,584.51 (the difference between the amount of their set-off and the face value of the $105,000 note);

(4) HANS' and ELEONORE's motion for entry of a judgment for $56,445 plus interest and costs against INLAND for repayment of sums paid to INLAND by HANS and ELEONORE is denied;

(5) HYNES' and ROSEWELL's motion for summary judgment is granted, INLAND's Third Party Complaint directed against them is dismissed, and HYNES and ROSEWELL are dismissed as third parties Defendant herein."

In reaching these conclusions the circuit court apparently reasoned that the unpaid 1970, 1971 and 1972 taxes on the property violated the terms of the DeFurgalski agreement of December 19, 1972, to convey the property free and clear of all liens and violated the terms of the warranty deed that followed, and that the back taxes on the property incumbered the title that Seifert and Rynes obtained from the DeFurgalskis.

Inland's first argument on appeal is that there was no breach of the Defurgalskis' warranty of no incumbrances. The warranty deed given to Seifert and Rynes was substantially in the form set forth in section 9 of "An Act concerning conveyances" (Ill. Rev. Stat. 1973,

ch. 30, par. 8), and accordingly, contained three statutory covenants: the covenant of seisin and of good right to convey; the covenant against incumbrances; and the covenant of quiet enjoyment. We also observe that by the express terms of the written agreement between Stanley DeFurgalski and Seifert and Rynes, DeFurgalski agreed to convey title free and clear of all incumbrances.

Relying on the well-settled rule that a covenant against incumbrances is a covenant *in praesenti*, that is breached, if at all, at the moment it is made (*Firebaugh v. Wittenberg* (1923), 309 Ill. 536, 543, 141 N.E. 379; *Meyers v. Veres* (1923), 245 Ill. App. 127, 130; see *Fechtner v. Lake County Savings & Loan Association* (1975), 33 Ill. App. 3d 307, 308-09, 337 N.E.2d 193, *rev'd* (1977), 66 Ill. 2d 128), Inland contends that there was no breach of that covenant because the sales agreement was executed and the warranty deed delivered in 1972, and the back taxes were not imposed until 1978. According to Inland, since at the time the warranties in this case were made there were no tax liens of record, no back taxes levied or unpaid, no reassessment of the premises, and no notice of intention to back tax, the covenant against incumbrances was not breached and the Seiferts had no defense to its foreclosure action.

■ In our opinion, Inland takes too narrow a view of the covenant against incumbrances. In *Brown v. Lober* (1979), 75 Ill. 2d 47, 551, 389 N.E.2d 1188, our supreme court defined an incumbrance as "any right to, or interest in, land which may subsist in a third party to the diminution of the value of the estate, but consistent with the passing of the fee by conveyance." In this regard, we also note that in *Firebaugh*, our supreme court recognized that an inchoate right of dower was a valuable right and one that affected the market value of land, and that in popular understanding was an incumbrance. (*Firebaugh v. Wittenberg* (1923), 309 Ill. 536, 544.)[2] We hold that if the claim of the county defendants for back taxes was a lawful claim or demand enforceable against the Seiferts, then the unexercised authority of these defendants to impose the back taxes constituted an incumbrance on the property at the time of transfer from the DeFurgalskis to Seifert and Rynes.

■ Inland next argues that even if the unpaid back taxes breached the DeFurgalskis' covenant, Inland could not be held responsible for the breach. It gave no warranty deed to Seifert and Rynes,

---

[2]The General Assembly has abolished the estate of dower. (Ill. Rev. Stat. 1981, ch. 110½, par. 2—9.) However, that does not affect the reasoning of *Firebaugh* that an inchoate right can be an incumbrance.

made them no guarantees and gave no assurances. Rather, it merely purchased and was assigned a note and mortgage from a creditor of Seifert and Rynes. Thus, in Inland's view, this defense which the Seiferts might have raised in a foreclosure action by the DeFurgalskis was not available to them in this foreclosure action by Inland. We disagree.

It is a well-established general rule that the assignee of a trust deed in the nature of a mortgage takes it subject to the same defenses that existed between the original parties to the instrument. In *King v. Harpster* (1922), 306 Ill. 202, 209, 137 N.E. 823, our supreme court stated:

> "The doctrine of an innocent purchaser for value, which applies to commercial paper, has no application to a mortgage. The assignee of a mortgage takes it subject to the same equities it was subject to in the hands of the assignor. The assignee of a mortgage knows that it is not assignable at common law but only in equity and that he takes it subject to all equities existing in favor of the mortgagor. It is therefore the duty of the assignee to inquire of the mortgagor if there is any reason why it should not be paid."

See also *Olds v. Cummings* (1863), 31 Ill. 188.

In the instant case, Stanley DeFurgalski assigned his interest in the $105,000 note and trust deed to Inland. "The assignment of the mortgage note carried with it an equitable assignment of the trust deed by which it was secured." (*Miller v. Frederick's Brewing Co.* (1950), 405 Ill. 591, 596, 92 N.E.2d 108.) The right of Inland to recover on the note against the Seiferts is not involved in this case. Rather, we are concerned with the trust deed on which Inland seeks to foreclose. Applying the principles stated in *King v. Harpster*, it was Inland's duty to inquire of Seifert and Rynes, the mortgagors, if there was any reason why the mortgage should not be paid. There is nothing in this record indicating that Inland made inquiry of Seifert and Rynes about the taxes for the years 1970, 1971 and 1972. Such inquiry may have disclosed the billed taxes to be abnormally low, $2,000 annually for property which sold for $915,000.

Inland argues, however, that its duty to inquire of possible defenses was satisfied by a search of the public record and cites *Connor v. Wahl* (1928), 330 Ill. 136, 161 N.E.2d 306, in support of its argument. We fail to see how *Connor* supports Inland's argument. We can see no reason to depart from the general rule that the assignee of a mortgage takes it subject to the same equities it was subject to in the hands of the assignor. *Connor v. Wahl* (1928), 330 Ill. 136, 141, 161

N.E.2d 306.

 Inland next contends that even assuming the imposition of back taxes could breach the covenant against incumbrances, there was no breach of the covenant here because the back taxes were improperly assessed and levied. According to Inland, Illinois statutes barred the imposition of back taxes on the property for the years 1970, 1971 and 1972. Therefore, Inland argues that there was no defense to Inland's foreclosure action and that it should have been granted summary judgment. Preliminarily, we note that Inland has standing to contest here the validity of the back taxes to the extent necessary for a determination of whether the back taxes constituted a breach of the covenant against incumbrances.

First, it is argued that the county assessor could not revise the assessment of the subject property pursuant to section 220 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 701). Section 220 deals with property omitted from an assessment and states:

> "If any real or personal property is omitted in the assessment of any year or number of years, so that the taxes thereon, for which such property was liable, have not been paid, or if any such property, by reason of defective description or assessment thereon, fails to pay taxes for any year or years, in either case the same property, when discovered, shall be listed and assessed by the board of review or, in counties having a board of appeals, by the assessor either on his own initiative or when so directed by the board of appeals. For purposes of this Section, 'defective description or assessment' includes a description or assessment of real property which omits all the improvements thereon as a result of which part of the taxes on the total value of the real estate as improved remain unpaid."

The "Notice of Intention to Back-Tax Omitted Assessments" sent by the county assessor to Sipal Realty stated that the assessment of the real property involved herein was defective because the building was omitted from the assessment for the years 1970 through 1976.

According to Inland, both the land and improvements thereon were included in the 1970, 1971 and 1972 assessments, and therefore, the assessments for those years could not be reviewed in a subsequent year. Inland relies primarily upon the following language from our supreme court's opinion in *People ex rel. McDonough v. Birtman Electric Co.* (1934), 359 Ill. 143, 147, 194 N.E. 282:

> "In the case of improved real estate the entity is composed of two components: one land and the other buildings and improvements. If both are listed and valued separately for assessment

purposes the assessment cannot be reviewed in a subsequent year, but if either the land itself or the building and improvements have been omitted then that component part which was so omitted becomes a subject of assessment for taxation in a subsequent year."

(See also *People ex rel. Schuler v. Chapman* (1939), 370 Ill. 430, 440, 19 N.E.2d 351.) The *Birtman Electric Co.* case also stated:

"Where real estate has been assessed by proper description and the taxes extended thereon have been fully paid, the board of review has no power in a subsequent year to review that assessment and increase or diminish it, but if no assessment was made then the board of review may make an assessment of the omitted property in a subsequent year." (*People ex rel. McDonough v. Birtman Electric Co.* (1934), 359 Ill. 143, 145, 194 N.E. 282.)

See also *Holiday Inns of America, Inc. v. Tully* (1982), 106 Ill. App. 3d 1004, 1009, 436 N.E.2d 592.

The Seiferts, in their brief on appeal, observe that this argument as to the illegality of the back-tax assessment was not raised in the court below. Our review of the record confirms this observation. Thus, this argument has been waived for purposes of appellate review. See *Brown v. Lober* (1979), 75 Ill. 2d 547, 556, 389 N.E.2d 1188.

We note, however, that in its initial brief on appeal, Inland argued:

"For 1970, 1971 and 1972, 229 Marengo was assessed as improved by single-family residences (which apparently had preceded the apartment building). But a misassessment is not an omitted or a defective assessment. The Assessor could not collect back taxes after its error. It could only reassess for subsequent years."

Assuming the facts contained in this statement to be true, we note that the property still was subject to back-tax liability under that portion of section 220 concerning property defectively assessed. The subject real estate was improved by an apartment building in 1970, 1971 and 1972 and not by single-family residences. The property was defectively assessed for those years because the assessments omitted all the improvements thereon, namely, the apartment building.

■ Inland's second basis for arguing that the back taxes were improperly assessed and levied is that back taxes could not be imposed on omitted property once ownership of the property changed hands. This argument is based upon section 221 of the Revenue Act of 1939

(Ill. Rev. Stat. 1979, ch. 120, par. 702), which provides:

> "No such charge for tax and interest for previous years, as provided for in Section 220 of this Act, shall be made against any property prior to the date of ownership of the person owning such property at the time the liability for such omitted tax was first ascertained. Ownership as used in this section shall be held to refer to bona fide legal and equitable titles or interests acquired for value and without notice of the tax, as may appear by deed, deed of trust, mortgage, certificate of purchase or sale, or other form of contract."

In *Birtman Electric Co.*, our supreme court stated the policy underlying this provision:

> "In order to safeguard the rights of purchasers and certain transferees of either real or personal property from the danger of assessments for back taxes, the legislature has provided that no charge for tax for previous years shall be made against any property prior to the date of ownership of the person owning such property at the time the liability for such omitted tax was ascertained." *People ex rel. McDonough v. Birtman Electric Co.* (1934), 359 Ill. 143, 148, 194 N.E. 282.

According to Inland, the transaction between DeFurgalski and Seifert and Rynes changed the ownership of the subject property and prevented any charge against the property for back taxes for the years 1970, 1971 and 1972.[3] (See *People v. Sears* (1931), 344 Ill. 189, 194-200, 176 N.E. 273.) Thus, Inland argues that the revisions in the assessment of the property were improper.

Although section 221 does prevent back taxing of omitted property for years prior to the date of ownership of the person owning the property at the time liability for such omitted tax was first ascertained, that section also defines ownership as "bona fide legal and equitable titles or interests acquired for value and *without notice of the tax*." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 120, par. 702.) Thus, the mere change of ownership alone was insufficient to preclude a back tax of the property for years prior to the acquisition of the property by Seifert and Rynes. If Seifert and Rynes took the property with notice of the tax, then section 221 would not bar the imposition of the back taxes.

---

[3]In making this argument, Inland does not distinguish between liability for the 1970 and 1971 taxes and liability for the 1972 taxes. A distinction may be possible since DeFurgalski delivered the warranty deed to Seifert and Rynes on December 26, 1972. No party to this appeal emphasizes this possible distinction, and therefore, we treat all the years, *i.e.*, 1970 through 1972, similarly for purposes of this appeal.

The parties agree that the total value that Seifert and Rynes were to pay DeFurgalski for the property was $915,000, and that the written agreement between Seifert and Rynes and DeFurgalski stated the 1971 real estate taxes were $2,117.02. The Seiferts argue on appeal that there was notice of the possibility of a back tax by virtue of the amount of the taxes considering the total value of the property. We agree that if the taxes *vis-a-vis* the total value of the property were abnormally low, this may have indicated that Seifert and Rynes acquired the property "with notice of the tax." There is, however, no evidence in the record from which the circuit court could have concluded that the taxes were so low as to give notice of the possibility of back taxing. Nothing in the record indicates that the amounts of the taxes were unusual for the neighborhood in which the property was located or for the level of improvement on the property. This, in our opinion, gives rise to a question of fact which cannot be resolved given the present state of the record.

In sum, we hold that there is a genuine issue of material fact as to whether Seifert and Rynes acquired the property without notice of the tax. If they acquired the property "without notice of the tax," the back taxes were invalid and could not constitute an incumbrance on the property. If, however, Seifert and Rynes acquired the property with notice of the tax, then the back taxes were valid, and consequently, would constitute an incumbrance on the property. Accordingly, this cause must be remanded for further consideration of this issue.

Although there will be a remand, we must also consider Inland's remaining argument as to the invalidity of the back taxes, because if accepted, this argument would require the reversal of the summary judgment in favor of the Seiferts and the granting of summary judgment in favor of Inland.

Inland's third argument concerning the propriety of the back taxes is that the imposition of back taxes was null and void because the assessor did not comply with the notice requirements for assessing omitted property set forth in section 221 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 702). The last sentence of this section provides: "The owner of property, if known, assessed under this and the preceding section shall be notified by the assessor, board of review or Department, as the case may require."

The record shows that the only "Notice of Intention to Back-Tax Omitted Assessments" was sent to Sipal Realty. As noted above, Sipal Realty managed the subject property on behalf of Seifert and Rynes. It is Inland's position that since Sipal Realty was never the

owner of the property, the provisions of section 221 requiring notice to the owner were violated and the back taxes were null and void. We note that under section 116 of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 597), dealing with notice of increased assessments, notice to the taxpayer's agent is specifically sanctioned. (See *In re Application of Rosewell* (1979), 73 Ill. App. 3d 225, 234, 390 N.E.2d 1294.) In *In re Application of Rosewell*, a case involving section 220 of the Revenue Act of 1939, the appellate court rejected taxpayers' arguments that back taxes were assessed without proper notice where notice was sent to the taxpayers' attorney and it was undisputed that the taxpayers received actual notice. (73 Ill. App. 3d 225, 234.) Inland does not argue that Seifert and Rynes did not receive actual notice of the back-tax proceedings. In fact, when making an estoppel argument in its appellate brief, Inland states that "[t]he Seiferts knew that the back tax proceeding, in fact, was going on." On April 5, 1978, J. Douglas Donnenfeld, an attorney for Sipal Realty, and therefore a representative of the interests of Seifert and Rynes, appeared before the assessor's office, and the back taxes were not imposed until October 16, 1978. Under these circumstances, we are of the opinion that sending notices to Seifert's and Rynes' agent and not to them personally did not render the back taxes invalid.

Inland argues that notice should have been given to Oak Park Trust & Savings Bank, as trustee under trust No. 6743, and to DeFurgalski, as well as to Seifert and Rynes. Inland bases this argument on the broad definition of ownership contained in section 221 of the Revenue Act of 1939, which is quoted earlier in this opinion. We think that for the same reasons that the failure to send notices to Seifert and Rynes did not render the back taxes invalid, the failure to send such notice to the bank did not render them invalid.

Inland also contends that DeFurgalski should have been given notice of the assessor's intent to back tax, because DeFurgalski was a mortgagee of public record when the assessor imposed the back taxes, and thus an owner within the meaning of the statute. We need not reach this argument. We are here concerned with whether the back taxes were properly assessed with respect to the interests of Seifert and Rynes. We have already held that Seifert and Rynes were given adequate notice of the back tax proceedings; if the back taxes were otherwise properly assessed and levied, they were valid as to Seifert and Rynes. If this is so, the back taxes constituted an incumbrance which breached DeFurgalski's covenant of no incumbrances. For the same reason we need not decide whether Inland was entitled to notice of the back tax proceeding.

■ Inland further contends that it could not be held liable for the back taxes because the Seiferts waived or were estopped by their conduct from seeking to pass the back taxes on to Inland. Inland contends that an estoppel arose in the following manner:

1. The Seiferts concealed the material fact of the back-tax proceedings and lulled Inland into believing that there was no pending proceeding.

2. The Seiferts knew that the back-tax proceeding, in fact, was going on.

3. Inland did not know of the back-tax proceedings, being uninformed by the assessor, the Seiferts or the DeFurgalskis.

4. The Seiferts did not intend to tell Inland of the proceedings, and so meant to keep them in the dark.

5. Inland relied on the Seifert concealment, thus failing to assert the complete defenses to the Assessor's proceedings that were available.

6. Inland was prejudiced by being found liable for a claim without ever being able to defend itself.

We do not agree that the Seiferts are estopped from raising their payment of the back taxes as a setoff against their liability to Inland on the note. In our opinion there can be no estoppel here because the Seiferts were under no duty to notify Inland, as the assignee of the second mortgage, of any back-tax proceedings. Inland cites no factually similar cases which would support a duty. Moreover, we disagree with the sixth element of Inland's estoppel theory. Inland has been able to litigate issues relating to the validity of the back taxes in the context of its action to foreclose the second mortgage. Inland will only be held liable on remand for a breach of the covenant against incumbrances if the circuit court finds that those taxes were properly imposed. In short, Inland has failed to set forth a factual basis for estoppel.

Inland also argues that if an estoppel did not arise here, then the Seiferts waived their right to assert the payment of back taxes as a setoff. Inland asserts that it must be presumed that the Seiferts knew of their defenses to the revised assessments and back taxes and that the Seifert's failure to raise the proper objections to the assessor's revision of the assessments can only be considered to be intentional. Inland further asserts that the Seiferts' continued monthly payments on the note negated their claim that payment of the back taxes extinguished their liability on the note. This waiver argument assumes, however, that the Seiferts had completely valid defenses to the reassessment and back taxes. Since it is not clear at this point whether

this was true, we cannot say that the Seiferts waived their right to assert the payment of back taxes as a setoff.

Inland's last argument with respect to the counterclaim by the Seiferts appears to be that since the voluntary-tax-payment doctrine clearly prevented the Seiferts from recovering from the county defendants taxes which they paid voluntarily, their attempt to assert a setoff against Inland should also have been barred. This argument is based on the assumption that the Seiferts voluntarily, without protest, paid invalid back taxes. Since at this point in this litigation we cannot say that the back taxes were invalid, we cannot accept Inland's argument.

On cross-appeal, the Seiferts contend that the circuit court erred in fixing the amount of the judgment in their favor. We decline to address this issue at this time, because if on remand the circuit court determines that the back taxes were improperly imposed, there was no breach of the covenant against incumbrances. In that instance, of course, the Seiferts will recover nothing on their "set-off and counterclaim."

■ Finally, Inland contends that the circuit court erroneously granted summary judgment in favor of the county assessor and county treasurer-collector, thereby erroneously dismissing Inland's third-party complaint against them. In that action, Inland sought the return of all tax payments received by the county collector as a result of the subject real estate being back-taxed for the years 1970, 1971 and 1972. With respect to these defendants, Inland argues that the revision of the assessments on the property and the imposition of back taxes were improper for the same reasons that it asserted that they were improper in its action against the Sieferts. According to Inland, if it must reimburse the Seiferts, then the county defendants must reimburse it.

We have already held that if the back taxes were imposed improperly, then they do not constitute a breach of the covenant against incumbrances, and the counterclaim of the Seiferts against Inland must fail. Thus, if the back taxes were invalid, Inland has no obligation to pay them, or any part of them, by means of setoff or otherwise.

In any event, we believe that any action by Inland against the county defendants is barred by the voluntary-payment doctrine. As noted in the statement of facts, on April 10, 1980, Sipal Realty, as agent for the Seiferts, paid back taxes, interest, and penalties for the years 1970, 1971 and 1972 in the amount of $123,584.81, without protest. It is well-settled law in Illinois that taxes voluntarily, though erroneously, paid cannot be recovered unless recovery is authorized by

statute. (*Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 48, 426 N.E.2d 844 *cert. denied* (1982), 456 U.S. 946, 72 L. Ed. 2d 468, 102 S. Ct. 2012; *S.A.S. Co. v. Kucharski* (1972), 53 Ill. 2d 139, 142, 290 N.E.2d 224; *Burley v. Lindheimer* (1937), 367 Ill. 425, 429, 11 N.E.2d 926; *Jansen Real Estate Corp. v. Cullerton* (1977), 49 Ill. App. 3d 231, 236, 364 N.E.2d 905.) Since there is no statute authorizing the recovery of the taxes involved in this case, no relief can be obtained from the county defendants.

Inland argues, however, that the voluntary-payment doctrine applies against the Seiferts because they paid the taxes in this case, but that it cannot apply to Inland because Inland paid no taxes and seeks no refund. According to Inland, it is not suing for a refund, but for damages to it and its interest in real property caused by the county defendants. Inland cites no case which indicates that the voluntary-payment doctrine is inapplicable to this case, and we refuse to dilute this doctrine under the facts and circumstances of this case.

In reaching this conclusion we observe that if the back taxes were imposed improperly on the subject property, the Seiferts' counterclaim for a setoff must fail. Inland will only be liable to the Seiferts if the circuit court on remand concludes that the back taxes were properly imposed.

For the aforementioned reasons, we affirm the judgment of the circuit court dismissing Inland's third-party complaint against the county assessor and the county treasurer-collector. We reverse the following:

1. The dismissal of Inland's complaint for foreclosure.

2. The part of the final order which adjudged that the Seiferts are entitled to set off $128,584.51 against the balance of the purchase price due under the trust deed and note and declared the lien of the trust deed cancelled and void.

3. The judgment in favor of the Seiferts and against Inland for $23,584.51.

Affirmed in part; reversed and remanded in part.

McGILLICUDDY and O'CONNOR, JJ., concur.