ILLINOIS INSTITUTE OF TECHNOLOGY, Plaintiff-Appellant, v. EDWARD J. ROSEWELL, Treasurer and Ex-Officio County Collector of Cook County, *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 83—2794

Opinion filed September 30, 1985.

Mary Anne Smith, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Jane C. Casey, Susan Condon, and Henry P. Wolff, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Illinois Institute of Technology, sought a refund from defendants, Cook County and its treasurer and ex-officio collector, clerk, and assessor, of excess real estate taxes paid for the year 1979 on exempt property. After initially ordering the refund, the court, on defendants' motion for rehearing, found that the voluntary payment doctrine barred plaintiff from receiving the refund and vacated its prior order. Plaintiff appeals. We vacate the order denying the refund, and we reinstate the prior order granting the refund.

On June 26, 1978, the Cook County board of appeals determined that certain property of plaintiff's was 90% tax exempt as of January 1, 1977, and on August 14, 1978, the Department of Local Government Affairs approved the exemption. On January 20, 1980, plaintiff received notices of proposed increases in the assessed valuation of the property. The proposed increases were significant: from $569,808 to $1,964,860 for one parcel and from $192,566 to $1,431,805 for the other. On February 6, 1980, plaintiff filed with the assessor a 1979 real estate assessed valuation complaint indicating that the assessed valuation was excessive because it included property previously determined exempt, the property was assessed at an improper percentage and the property was overvalued. A rider to the 1979 real estate assessed valuation complaint indicated that the only reason provided by the assessor for the increased valuation was that a quadrennial assessment had occurred. The rider further indicated that it was impossible for plaintiff to determine the basis for the increase because the property cards for the parcels had been checked out to the assessor ever since plaintiff received notice of the increases. On March 25, 1980, plaintiff received notice from the assessor that the assessed valuation had been reduced, but the notice did not indicate the reason for the reduction, and plaintiff was unable to determine the reason for the reduction because the property record cards were unavailable for inspection. In late March or early April 1980, plaintiff paid in full its taxes for the year 1979. Some time after the period for filing a specific objection to the assessor's application for judgment had elapsed, the record cards became available, revealing that the property had received no exemption.

On June 16, 1981, plaintiff filed its complaint seeking a refund of the excess taxes paid. On November 30, 1982, the court found that

plaintiff paid in full all taxes for the tax year 1979: $35,615.46 for one parcel and $37,360.81 for the other. The court further found that the assessed valuation of the property should be reduced from $224,190 to 0 for one parcel and from $235,177 to $20,549 for the other on the basis of the tax exempt status of the property. The court ordered that the county collector refund to plaintiff $69,711.83, the excess amount of taxes paid for the year 1979. On December 30, 1982, defendants filed a motion for rehearing. Defendants asserted that since plaintiff voluntarily paid the taxes without protest and in the absence of a statute authorizing a refund, the voluntary payment doctrine bars a refund even when the taxes were paid on property entitled to be exempt from taxation. On June 9, 1983, the court found that the voluntary payment doctrine barred the refund, and the court vacated its order of November 30, 1982, and denied the refund of the taxes voluntarily paid.

Plaintiff argues that the court erred in applying the voluntary payment doctrine to bar a refund to plaintiff of real estate taxes paid on exempt property. We agree.

Taxes voluntarily though erroneously paid cannot be recovered unless recovery is authorized by statute. (*Inland Real Estate Corp. v. Oak Park Trust & Savings Bank* (1983), 127 Ill. App. 3d 535, 549-50, 469 N.E.2d 204, 214.) Payment under protest is the typical means by which a taxpayer signifies his contention that a tax is improper, but the absence of a protest alone does not require application of the voluntary payment doctrine. (*Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 49, 426 N.E.2d 844, 849.) The voluntary payment doctrine does not apply unless it is shown that the taxpayer had knowledge of the facts upon which to frame a protest. 86 Ill. 2d 39, 49, 426 N.E.2d 844, 849.

In *Getto*, where the plaintiff challenged the method of calculating a municipal message tax, the court determined that the taxpayers were not provided with sufficient information to determine whether the method of taxation was proper. There, the charge involved appeared separately on each utility bill, and the bill included the explanation "Additional charges due to State and City Taxes." However, the bill did not indicate which municipal tax was involved, what portion of the bill was being taxed or that the charge included a percentage charged for costs of accounting. Thus, the *Getto* court concluded that the payer had no way of ascertaining the method of calculating the message tax. In *Isberian v. Village of Gurnee* (1983), 116 Ill. App. 3d 146, 151, 452 N.E.2d 10, 14, where the plaintiff challenged the authority to impose a tax, rather than the manner in

which a tax had been computed, the court determined that the designation of the taxing body and the labeling of the type of tax sufficiently apprised the plaintiff of facts upon which he could have framed a protest.

■ Here, plaintiff is challenging the calculation of its real estate taxes. Property record cards are maintained which contain the basis for real estate tax calculations. However, the cards for the property involved here were not available for plaintiff's inspection. Therefore, plaintiff was unable to determine the basis for the tax reduction it received after filing a 1979 real estate assessed valuation complaint, and plaintiff did not learn that although its taxes were reduced, its tax exemption was not considered in the reduction. We believe that without the information contained in the record cards, plaintiff lacked knowledge of the facts upon which to frame a protest.

Defendants assert that plaintiff had knowledge of the facts upon which to frame a protest but failed to protest. However, defendants made no showing, as required under *Getto*, that plaintiff knew the essential fact that its exemption was not considered in the tax calculation. Defendants further assert that even if plaintiff lacked knowledge of the specific fact upon which to frame a protest, plaintiff could have pleaded in the alternative and filed an objection. We do not believe, however, that alternative pleading that fortuitously includes the correct facts upon which a protest can be framed constitutes knowledge of the facts as required for application of the voluntary payment doctrine.

■ Defendants next contend that *Getto* is a utility tax case, and therefore the voluntary payment doctrine as enunciated in *Getto* does not apply to real estate tax cases. We disagree. The language of *Getto* regarding the voluntary payment doctrine is general, and *Getto* contains nothing to suggest that its holding should be limited to utility tax cases. Defendants have advanced no persuasive reason why *Getto* should be limited to utility tax cases. Moreover, this court has already taken *Getto* beyond utility tax cases and applied it in a case involving a challenge to an amusement tax (see *Isberian v. Village of Gurnee* (1983), 116 Ill. App. 3d 146, 452 N.E.2d 10) and a case involving a challenge to the imposition of the Illinois use tax (see *Lusinski v. Dominick's Finer Foods, Inc.* (1985), 136 Ill. App. 3d 640).

Finally, defendants argue that the court lacks authority to refund the taxes plaintiff voluntarily paid because plaintiff waived its available legal and equitable remedies. We disagree.

■ Defendants maintain that plaintiff should have sought re-

lief under sections 194 and 235 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, pars. 675, 716), which provide for payment under protest and refund. However, section 194 provides for objection and payment under protest when the objection is "for any reason other than that the real estate is not subject to taxation \*\*\*." (Ill. Rev. Stat. 1979, ch. 120, par. 675.) When a tax is levied upon exempt property, the taxpayer need not pursue the legal remedy of paying under protest and filing an objection before seeking equitable relief. (*Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 105, 306 N.E.2d 299, 301.) Here, plaintiff's objection would have been based on the fact that a tax was levied upon exempt property. Thus, plaintiff was not required to seek relief under sections 194 and 235. In addition, section 194 requires a statement of the ground of the objection (Ill. Rev. Stat. 1979, ch. 120, par. 675), and plaintiff lacked knowledge of the facts which would have enabled it to set forth the ground of its objection. Defendants also contend that before paying the taxes, plaintiff could have filed a complaint to enjoin the collection of the taxes. However, we believe that since plaintiff lacked knowledge of the fact that its exemption was not considered in the tax calculation, plaintiff would have been unable sufficiently to state facts to entitle it to injunctive relief. Thus, we believe that the remedies which defendants assert were available to plaintiff were unavailable by virtue of plaintiff's lack of knowledge of essential facts. Therefore, plaintiff's failure to pursue other remedies does not preclude it from receiving a refund.

Accordingly, the judgment of the trial court of June 9, 1983, barring the refund to plaintiff is vacated, and the judgment of the trial court of November 30, 1982, ordering payment of the refund is reinstated.

Order denying refund vacated, order granting refund reinstated.

WHITE, P.J., and McGILLICUDDY, J., concur.