761 A.2d 344

ZURICH INSURANCE COMPANY

v.

PRINCIPAL MUTUAL INSURANCE
COMPANY, et al. (Two cases).

Nos. 1716 & 2327, Sept. Term, 1999.

Court of Special Appeals of Maryland.

Nov. 2, 2000.

J. Marks Moore, III (West & Moore, LLC, on the brief), Baltimore, for appellant.

Thomas M. Wochok (Ollen, Carleton, Evans & Wochok, on the brief), Fairfax, for appellees.

Argued before MOYLAN, SALMON and GEORGE J. HELINSKI, specially assigned, JJ.

SALMON, Judge.

The single issue to be addressed in this opinion is whether Zurich Insurance Company ("Zurich") had a duty to defend the owner of an apartment building and a property management company from a lawsuit brought by Sonia Davila, who was injured in an elevator accident on January 6, 1994. The firm of Barnes, Morris, Pardoe and Foster Management Services, LP ("BMPF"), at all times here relevant, managed the office building where Ms. Davila was injured, and Principal Mutual Insurance Company ("Principal") owned it.

In September 1993, Millar Elevator Service Company ("Millar") entered into a contract with BMPF to perform maintenance service on certain elevators and to modernize all elevators in the East-West Tower Office Building ("the Tower Building") located in Bethesda, Maryland. Pursuant to the terms of the contract, Millar secured, on behalf of Principal and BMPF, an Owners and Contractors Protective ("OCP") liability insurance policy from Zurich. The named insureds

under the policy were Principal and BMPF. The OCP policy provided liability coverage to the named insureds for (1) negligent supervision of Millar's work and (2) claims by third parties who suffered injuries or damages solely as a result of Millar's negligent acts or omissions in the performance of its work.

The OCP policy contained two exclusions that are of importance:

This insurance does not apply to:

\* \* \*

c. "Bodily injury" or "property damages" which occurs after the earlier of the following times:

(1) When all "work" on the project (other than service, maintenance or repairs) to be performed for you by the "contractor" at the site of the covered operations has been completed; or

(2) When that portion of the "contractor's" "work" out of which the injury or damage arises, has been put to its intended use by any person or organization. . . .

In addition to the OCP policy, Millar bought a second policy from Zurich—a Commercial General Liability ("CGL") policy. The CGL policy covered Millar—but not Principal or BMPF— for claims against Millar arising from Millar's negligence while working at the Tower Building.

On January 6, 1994, sometime after 4 p.m., Ms. Davila, an office worker in the Tower Building, boarded an elevator on the eleventh floor intending to return to her office on the third floor. The elevator "fell or dropped from the eleventh floor in an extremely rapid fashion" to a position between two of the basement floors, where she was briefly trapped. As a result of the accident, Ms. Davila suffered serious physical and psychological injuries.

Ms. Davila filed a tort suit in the Circuit Court for Montgomery County against Principal, BMPF, and Millar. In her second amended complaint, she alleged that she was a

passenger in an elevator, which, due to the carelessness and negligence of the defendants, failed and fell or dropped from the eleventh floor in an extremely rapid fashion past plaintiff's designated stop at her office on the third floor to a position between the B4 and B3 sublevels of the above building.

Paragraph 9 of her complaint read:

The defendants failed to warn the plaintiff that the elevator system she was using was being repaired or remodeled and was not properly operational and, as a result thereof, the plaintiff took the elevator and became injured as stated in Count I above.

Principal and BMPF asked Zurich to provide a defense and to indemnify them from the claims asserted in Ms. Davila's lawsuit. Relying on exclusions c(1) and (2) quoted *supra*, Zurich refused to defend. Consequently, St. Paul Fire & Marine Insurance Company ("St. Paul"), the insurer of Principal under a separate policy, defended Principal and BMPF in the Davila tort suit.

On December 22, 1997, Millar, Principal, and BMPF settled the Davila lawsuit for $150,000. Millar contributed $75,000 to the settlement, and St. Paul, on behalf of Principal and BMPF, paid the remainder.

St. Paul, BMPF, and Principal, on December 31, 1997, filed a declaratory judgment action against Zurich in the Circuit Court for Montgomery County. The plaintiffs asked the court to declare, *inter alia*, that Zurich, under its OCP policy, had a duty to defend and indemnify Principal and BMPF for the monies ($75,000) expended in settling the Davila lawsuit. Additionally, plaintiffs asked the court to declare that Zurich had breached a duty to defend BMPF and Principal in the Davila tort action. St. Paul, as a third party beneficiary of the OCP policy, asked the court to enter a judgment in its favor for the amount it paid to settle the Davila suit, together with attorneys' fees and costs incurred in defending that suit and in bringing the declaratory judgment action.

Discovery in the case was conducted. Depositions revealed that, on the day of Davila's accident, Frank Jenkins, a Millar employee, along with a helper (Bob Bohanan, also a Millar employee), performed no-load safety tests on all four elevators in the West Tower of the Tower Building, including the elevator in which the accident occurred. The State of Maryland had asked that such tests be conducted prior to commencement of the modernization work.

To perform the safety tests, Jenkins and Bohanan placed the elevators on "independent service" so they could not be used by any of the office workers in the Tower Building. When they finished the tests later that day, Jenkins and Bohanan returned the elevators to regular service. Thus, the elevators were available for normal use when Ms. Davila was injured.

St. Paul, Principal, and BMPF filed a motion for partial summary judgment in the declaratory judgment action. They asserted that Zurich, under its OCP policy, breached its duty to defend its named insureds.

Zurich filed an opposition to the motion for partial summary judgment. It contended, based on the exclusions set forth in exclusion c(1) and (2) of the OCP policy, that it had no duty to defend the Davila claim. Moreover, relying primarily on the decision in *James v. Hyatt Corp.*, 981 F.2d 810 (5th Cir.1993), Zurich moved for summary judgment in its favor as to all of the plaintiffs' claims.

On March 23, 1999, a hearing was held regarding the motion for partial summary judgment. Zurich's counsel argued that it was undisputed that, at the time of the accident, no employees of Millar's were at the Tower Building and that, based on the allegations in Ms. Davila's own complaint, there was not even a potentiality of coverage because she was using the elevator for its intended purpose at the time the accident occurred. The trial judge rejected Zurich's arguments and granted plaintiffs' summary judgment as to their claim that Zurich had a duty to defend the Davila action. The court explained its ruling as follows:

Okay. Well, it is certainly an interesting argument both of you make in terms of this nifty issue of duty to defend coverage.

I am going to rule in favor of the plaintiff. I do that because I think I am right, but I acknowledge that I may not be. I just think that given these circumstances and given the allegations that are in the complaint, that it is at least close enough to trigger a duty to defend.

When the plaintiff alleges in the complaint a failure to warn about repair and remodeling, that is close enough to an allegation that would allow the exclusion not to apply. That is sort of a double negative and I hope I said that right.

Even though it is not a general liability policy which includes the general litigation insurance, the exclusion to whatever extent it is ambiguous, the ambiguity needs to be resolved against the writer, the insurance company, the exclusion does not throw the claim for duty to defend out.

Therefore, I will rule in favor of the plaintiff with respect to the claim for partial summary judgment as to the issue of duty to defend subject to further proof as to damages.

I guess that makes [Zurich's] cross-motion moot but I will leave that up to you as to whether you think it does or not.

It is not before me now. I am simply ruling on what is before me, which is the plaintiff's motion for partial summary judgment.

Madam Clerk, for the reasons stated, indicate the [c]ourt grants the plaintiff's motion for partial summary judgment as to duty to defend.

Subsequently, the plaintiffs moved for full summary judgment against Zurich, asking the court to rule, as a matter of law, that Zurich had a duty to indemnify them for the $75,000 expended in settling the Davila tort suit. That motion was also granted. Subsequently, the trial judge filed a written order declaring the rights of the parties and granting the plaintiffs a judgment of $74,705.59 (representing court costs and attorneys' fees) resulting from Zurich's [alleged] breach of

its duty to defend and $75,000 due to Zurich's [purported] breach of its duty to indemnify.

## ANALYSIS

During oral argument in this case, counsel for appellees (St. Paul, BMPF, and Principal) made an unusual concession. Appellees' counsel said that his clients no longer contended that the trial judge was correct when he ruled that Zurich owed Principal and BMPF indemnification for the amount they expended to settle the tort case. Based on that concession, together with our own review of the record, we shall reverse the grant of summary judgment and order that upon remand the trial court should declare that Zurich had no duty to indemnify the appellees for the monies expended to settle the Davila tort suit.

This leaves us with the issue of whether the trial judge erred when he entered partial summary judgment in favor of the appellees concerning Zurich's duty to defend.

### A. Standard of Review

A trial court may grant summary judgment only if "the motion and response show that there is no genuine dispute as to any material fact and the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2–501(e). In reviewing a trial judge's grant of a summary judgment motion, we must consider the facts, and any reasonable inferences drawn from those facts, in the light most favorable to the non-moving party. *See Dobbins v. Washington Suburban Sanitary Comm'n*, 338 Md. 341, 345, 658 A.2d 675 (1995); *Richman v. FWB Bank*, 122 Md.App. 110, 146, 712 A.2d 41 (1998), *aff'd*, 354 Md. 472, 731 A.2d 916 (1999).

### B. Duty to Provide a Defense

▬▬▬ Recently, in *Utica Mutual Insurance Company v. Miller*, 130 Md.App. 373, 383, 746 A.2d 935 (2000), Judge Adkins, for this Court, summarized the "potentiality" rule by saying:

[I]f any claims potentially come within the policy coverage, the insurer is obligated to defend all claims " 'notwithstanding alternative allegations outside the policy's coverage, until such times ... that the claims have been limited to ones outside the policy coverage.' " *Southern Md. Agric. Assoc., Inc. v. Bituminous Cas. Corp.*, 539 F.Supp. 1295, 1299 (D.Md.1982) (quoting *Steyer v. Westvaco Alan Appleman Insurance Law and Practice*, 450 F.Supp. 384, 389 (D.Md.1978)); *see* John Alan Appleman, *Insurance Law and Practice*, § 4684.01 (Rev. ed.1979) at 102–06 ("The fact that the pleadings state a cause of action that is not covered by the policy does not excuse insurer if another ground for recovery is stated that is covered.... Accordingly, the insurer is obligated to provide a defense against the allegations of covered as well as the uncovered claims.") Doubts as to whether an allegation indicates the possibility of coverage should be resolved in the insured's favor. *See United States Fidelity & Guar. Co. v. National Paving and Contracting Co.*, 228 Md. 40, 54 [178 A.2d 872] (1962).

■ Predictably, Zurich claims that there was no potentiality for coverage in this case based on the allegations in Ms. Davila's second amended complaint. While Zurich relies on two distinct exclusions to support its argument, it is necessary to discuss only one. Exclusion c(2) says, unambiguously, that the policy "does not apply to ... '[b]odily injury' ... which occurs after the earlier of ... (2) [w]hen the portion of the contractor's 'work' out of which the injury or damages arises, has been put to its intended use by any person...." The undisputed facts in this case were that at the time of the accident Millar's employers were not on the premises, but earlier they had tested the elevator and, prior to the accident, had returned the elevator back to full service.

The "intended use" of an elevator in an office building is to transport passengers, office supplies, and equipment. And here, there was no dispute but that at the time of the accident the elevator "had been put to its intended use" by Ms. Davila.

The case of *James v. Hyatt Corp., supra,* is factually quite similar to the case at hand. In *James,* an escalator maintenance company (Schindler Elevator)was contractually required to secure OCP liability insurance to protect Hyatt, the owner of the hotel where escalators were located. *James,* 981 F.2d at 812. Schindler Elevator was also required by its maintenance contract with Hyatt to obtain a CGL policy to insure Hyatt for acts of negligence by Schindler Elevator and its agent while performing its work. *Id.* Schindler, Elevator complied with these insurance requirements by securing an OCP policy, which named Hyatt as the named insured, and by purchasing a CGL policy. The OCP policy was written by The Hartford Insurance Company (Hartford) and, like the OCP policy issued to Principal and BMPF, covered bodily injury arising from the contractor's (Schindler Elevator's) performance of its duties under a service and maintenance agreement. *Id.*

Grace James, a Hyatt hotel patron, sued Hyatt, claiming that she was injured as the result of an escalator malfunction. *Id.* At the time of the accident, the escalator, Ms. James was using had been put back into service after maintenance service by Schindler had been completed. *Id.* at 813–14. Hyatt asked Hartford to defend it under its OCP policy, but Hartford refused. *Id.* at 812. Hyatt and its CGL insurer settled the *James* lawsuit and then sued Hartford for indemnification and the cost of the defense of James's suit. *Id.* In the OCP policy issued to Hyatt, exclusion b(2) was worded exactly the same as exclusion c(2) in Zurich's policy. The *James* Court said:

> The James' petition alleged that Hyatt and ABC Elevator Company did not adequately inspect the escalator, and that the Hyatt failed to exercise reasonable care to guard against accident or injury. This states a claim arising out of the operations performed by Schindler, the escalator maintenance contractor. The essential question, however, is whether the allegations of the petition unambiguously fall within one of the policy exclusions. We conclude that they do.

The Hartford contends that James' claims fall within exclusion (b)(2), arguing that the [OCP] policy covers only damage which occurs while service or maintenance work is in progress. In effect, the policy treats each act of servicing or maintenance as a discreet insurable event. Schindler was not servicing or maintaining the escalator *and the escalator was being put to its intended use when James was injured.* Accordingly, this occurrence falls within the (b)(2) exclusion.

*Id.* at 913–14 (footnotes omitted) (emphasis added).

We agree with the *James* Court's analysis. Here, there was no potentiality of coverage because a reading of Ms. Davila's second amended complaint plainly shows that the elevator was being put to its intended use when the accident occurred. And, indisputably, Ms. Davila's injuries arose out of the use of the elevator that Millar had inspected.

In its opening brief, one of Zurich's main points was that the Davila accident was not covered by the OCP policy by virtue of exclusion c(2). Strangely, however, appellees, in their brief, make no focused effort to explain why exclusion c(2) would not eliminate any potentiality of coverage for the claim asserted by Ms. Davila. The closest appellees come to an explanation in this regard is the following:

Although Zurich contends that there is no evidence in this case that work was being performed by Millar Elevator Company at the precise time at which Ms. Davila sustained her injury in the elevator, Zurich cannot escape the clear allegations contained in the Second Amended Complaint that repairs and remodeling were in progress. The allegations of the Second Amended Complaint in the *Davila* litigation remained in the case throughout.

The short answer to this contention is that, under exclusion c(2), it does not matter that additional elevator repairs and/or remodeling work were to be performed on elevators in the future: there still would be no coverage if, as here, the elevator had been put to its intended use when bodily injury occurred.

For the foregoing reasons, we hold that the trial judge erred in declaring that Zurich owed Principal and BMPF a duty to defend and in granting appellees a $74,705.09 judgment on that basis.

Upon remand, all judgments entered against Zurich should be stricken. The court should enter a judgment declaring that under the OCP policy Zurich had (1) no duty to defend either Principal or BMPF and (2) no duty to indemnify Principal or BMPF for monies expended in settling the Davila suit.

**JUDGMENTS REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER ACTION IN ACCORDANCE WITH THE VIEWS EXPRESSED IN THIS OPINION; COSTS TO BE PAID BY APPELLEES.**