Second Division December 20, 2005

No. 1-02-1021

LIBERTY MUTUAL FIRE INSURANCE     ) Appeal from the

COMPANY, ) Circuit Court of

                    ) Cook County 

Plaintiff-Appellee, )

)

v. ) No. 00 CH 07429 

)  

ST. PAUL FIRE and MARINE INSURANCE )          

COMPANY,                  ) Honorable      

                                ) Patrick E. McGann

Defendant-Appellant. ) Judge Presiding

                                      

JUSTICE HALL delivered the opinion of the court:

This appeal arises out of an elevator accident occurring on November 15, 1996, which generated a number of underlying personal injury lawsuits.
(footnote: 1)  The appeal 
involves a dispute between two insurance companies, St. Paul Fire & Marine Insurance Company (St. Paul) and Liberty Mutual Fire Insurance Company (Liberty), concerning whether Liberty was obligated to defend and indemnify its insured, the Central Illinois Public Service Company (CIPS), in the underlying lawsuits.  CIPS and the Dover Elevator Company (Dover) were named as defendants in the underlying lawsuits.

The record shows that prior to the accident, CIPS and Dover entered into two separate service contracts under which Dover agreed to modernize and then upgrade two elevators located in a power generating facility owned and operated by CIPS in Newton, Illinois.  The parties entered into the first service contract on March 18, 1994, and the second on February 12, 1996.

As required by the service contracts, Dover obtained an owners and contractors protective liability insurance (OCP) policy naming CIPS as an insured.  The service contracts also required Dover to maintain a commercial general liability (CGL) policy on its own behalf.  Liberty issued both policies to Dover.

On May 16, 2000, Liberty filed a declaratory judgment action seeking a determination that under the OCP and CGL policies it issued to Dover, it did not have a duty to defend or indemnify CIPS in the underlying 
lawsuits.  The underlying lawsuits were scheduled for trial on October 16, 2000, but just prior to trial, they were settled.  St. Paul contributed its $5 million policy limit on behalf of CIPS.  Liberty contributed $5 million to the settlement on behalf of Dover, but nothing on behalf of CIPS.

After the underlying plaintiffs were dismissed from the litigation, trial commenced solely for the purpose of allocating liability between CIPS and Dover.  On October 26, 2000, the trial court dismissed CIPS's indemnity claim against Dover, as well as all other contractual claims between the parties, leaving only the contribution claims to be tried.

On November 3, 2000, a jury assessed 95% liability to CIPS and 5% liability to Dover.  The trial court later modified that finding on posttrial motions, decreasing CIPS's fault to 87.5% and increasing Dover's fault to 12.5%.  The parties subsequently accepted the reallocation.

On December 11, 2000, St. Paul filed an amended counterclaim for a declaratory judgment requesting the trial court to declare that Liberty did have a duty to defend and indemnify CIPS in the underlying 
lawsuits.  
St. Paul sought reimbursement for settlement costs and expenses it incurred in defending CIPS in the underlying lawsuits.  St. Paul argued that Liberty was estopped from contesting its duty to defend and indemnify CIPS, due to its failure to either defend the underlying lawsuits under a reservation of rights or file a timely declaratory judgment action concerning its obligation to defend.

On cross-motions for summary judgment on the parties' respective requests for declaratory judgment, the trial court ruled in favor of Liberty and against St. Paul, finding and declaring in separate memorandum opinions that Liberty had no duty to defend CIPS under its OCP or CGL policy.  After the trial court denied its motion for reconsideration, St. Paul filed a timely notice of appeal on April 3, 2002.

Because of its ruling on the duty to defend issue, the trial court did not reach the duty to indemnify issue.  For the reasons that follow, we affirm.

ANALYSIS

Since this is an appeal from a summary judgment, our review of the trial court's order granting summary judgment is 
de novo
. 
Sears, Roebuck & Company v. Acceptance Insurance Co.
, 342 Ill. App. 3d 167, 171, 793 N.E.2d 736 (2003).  "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court and appropriate subjects for disposition by summary judgment." 
Konami (America), Inc. v. Hartford Insurance Co. of Illinois
, 326 Ill. App. 3d 874, 877, 761 N.E.2d 1277 (2002).

Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (c) (West 2000); 
Bier v. Leanna Lakeside Property Ass'n
, 305 Ill. App. 3d 45, 50, 711 N.E.2d 773 (1999).  As in this case, where the parties file cross-motions for summary judgment, they invite the court to decide the issues presented as a matter of law. 
Lexmark International, Inc. v. Transportation Insurance Co.
, 327 Ill. App. 3d 128, 134, 761 N.E.2d 1214 (2001).

St. Paul first contends that the trial court erred in finding that the allegations in the underlying complaints fell within the "completed operations" exclusion set forth in the OCP policy.  We disagree.

The underlying lawsuits generally alleged that CIPS was negligent by failing to properly maintain and require proper maintenance of the elevator to prevent its falling from the fifteenth floor to the ground floor; by permitting use of the elevator when it knew or should have known of the unsafe conditions of the elevator; and by failing to adequately provide markings on the elevators for their proper use.  A review of the record shows that these allegations fell within the "completed operations" exclusion contained in the OCP policy.

The OCP policy contains the following exclusion commonly referred to as the "completed operations" exclusion:

"This insurance does not apply to:

(c) 'Bodily injury' or 'property damage' which occurs after the earliest of the following times:

(1) When all 'work' on the project (other than service, maintenance or repairs) to be performed for you by the 'contractor' at the site of the covered operations has been completed; or

(2) When that portion of the 'contractor's' 'work', out of which the injury or damage arises, has been put to its intended use by any person or organization."

Under the "completed operations" exclusion, a contract or operation is generally deemed completed when the work contracted for or undertaken has been finished and put to its intended use. See 9A Couch on Insurance § 129:15 (3d ed. rev. 1997); see also A. Korpela, Annotation, 
Construction and Application of Clause Excluding from Coverage of Liability Policy "Completed Operations Hazards,"
 58 A.L.R.3d 12, § 11, at 56 (1974 & Supp. 2005).  In the instant case, the record indicates that Dover's operations of "modernizing" and then "upgrading" the two boiler elevators were completed and the elevators put to their intended use by the time the incident occurred on November 15, 1996.

As mentioned, CIPS and Dover entered into a service contract on March 18, 1994, under which Dover agreed to "modernize" the elevators.  The contract provided that Dover would complete the "modernization" within 30 weeks of March 18, 1994.  Afterwards, Dover was obligated to provide maintenance and call-back service for a period of 12 months on each elevator after it was put back into service.

The parties entered into the second service contract on February 12, 1996, under which Dover agreed to "upgrade" the two elevators.  The second service contract provided that Dover would complete the "upgrade" within eight weeks after February 12, 1996.  Payment was due within 30 days after completion and acceptance of the work.  Under this second service contract, Dover was not obligated to provide any maintenance or call-back services.

The record clearly shows that Dover's operations were completed and that the elevators had been put back to their intended use by the time the incident occurred on November 15, 1996.  The underlying complaints alleged that the incident occurred as the subject elevator was taking employees of another contractor to their work site; the elevator's intended purpose.  Therefore, the incident falls within exclusion (c)(2) of the OCP policy. See, 
e.g.
, 
Zurich Insurance Co. v. Principal Mutual Insurance Co.
, 134 Md. App. 643, 652, 761 A.2d 344, 349 (2000).

St. Paul argues that the "completed operations" exclusion does not apply in this case because Dover's operations were ongoing at the time the incident occurred.  We disagree.

Two distinct operations were undertaken by Dover -- a modernization and an upgrade.  Dover entered into two separate service contracts for each operation it agreed to complete.  At the time the incident occurred, work to be performed under the service contracts was completed and the elevator had been put to its intended use.  Once Dover completed its operations and returned the elevator to its intended use, CIPS could have no liability for "acts or omissions in connection with the general supervision of such operations."

The fact that a Dover employee was on the premises to perform maintenance work on the elevator at the time the incident occurred did not render Dover's operations incomplete or ongoing, since such maintenance work was excluded from coverage under the OCP policy. See, 
e.g.
, 
Zurich,
 134 Md. App. at 652, 761 A.2d at 349 (finding that under the completed operations exclusion, "it does not matter that additional elevator repairs and/or remodeling work were to be performed on elevators in the future: there still would be no coverage if, as here, the elevator had been put to its intended use when bodily injury occurred").

Based upon our examination of the OCP policy and the undisputed facts, we conclude that the allegations in the underlying complaints fell within the "completed operations" exclusion, exclusion (c)(2), under which operations are deemed completed when that portion of work causing the injury has been put to its intended use.  Therefore the OCP policy does not provide coverage to CIPS for liability assessed against it.

St. Paul next contends that CIPS was made an additional insured under the terms of the blanket additional insured endorsement contained in the CGL policy, which conferred additional insured status on entities with which Dover had agreed in writing to provide insurance.  In this case, the blanket additional insured endorsement provided in relevant part that an insured was amended to include "any person, organization, state or other political subdivision, trustee or estate for whom you have agreed in writing to provide liability insurance."

St. Paul maintains that the two service contracts constituted "agreements in writing," as defined by the blanket additional insured endorsement, thereby obligating Dover to add CIPS as an additional insured on the CGL policy.  To support its position that CIPS is an additional insured under the CGL policy, St. Paul relies on policy language contained in each service contract's insurance provision.  The insurance provisions in both service contracts are identical and provide in relevant part as follows:

"It is expressly understood and agreed by and between the parties hereto that no Work of any kind is authorized nor shall any Work be begun under this Contract until the Contractor shall have provided and delivered to the Owner satisfactory and acceptable evidence of insurance which is in full compliance with the Insurance Specifications attached hereto and incorporated by reference herein."

St. Paul also relies on certain language contained in the "insurance specifications" section, which provides in pertinent part that contractors such as Dover "will secure, maintain and provide evidence" of "Comprehensive General Liability insurance for all claims for personal injury, bodily injury, including death, and property damage which may arise from the operations under this contract."

St. Paul contends that the above language establishes that Dover procured the CGL policy for CIPS's direct benefit.  Again, we must disagree with St. Paul.  When interpreting the provisions of a contract, the court must ascertain and give effect to the intent of the parties; and the language of the contract is the best indication of the parties' intent.
 Forest Glen Community Homeowners Ass'n v. Bishof
, 321 Ill. App. 3d 298, 303, 746 N.E.2d 1285 (2001).  Moreover, disagreement between the parties regarding the interpretation of a particular provision does not render that provision ambiguous. 
Young v. Allstate Insurance Co.
, 351 Ill. App. 3d 151, 157-58, 812 N.E.2d 741 (2004).

In applying these rules of construction, we conclude that the policy language at issue supports Liberty's interpretation that the insurance provision only required Dover to secure insurance to cover its own negligence -- which in turn, would protect CIPS from those same liabilities. See, 
e.g.
, 
Cerestar USA, Inc. v. Safway Steel Products, Inc.
, No. 3:02-CV-123 (N.D. Ind. June 20, 2005).  Moreover, there was no language in the insurance provision or insurance specifications section that obligated Dover to add CIPS as an additional insured on the CGL policy. See 
Transcontinental Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh
, 278 Ill. App. 3d 357, 367-68, 662 N.E.2d 500 (1996).  Under these circumstances, we find that CIPS was not an additional insured under the Liberty CGL policy.

St. Paul next contends that pursuant to the indemnity provision contained in the service contracts, Liberty was contractually obligated to defend and indemnify CIPS in the underlying lawsuits.  Again, we must reject St. Paul's contention.  Since CIPS was not an additional insured under the Liberty CGL policy, Liberty was under no obligation to indemnify CIPS. See 
Alliance Syndicate, Inc. v. Parsec, Inc.
, 318 Ill. App. 3d 590, 599, 741 N.E.2d 1039 (2000); 
Sears, Roebuck & Company v. Royal Surplus Lines Insurance Company
, 61 Fed. Appx. 280, 283-84 (7th Cir. 2003) (unpublished order, March 14, 2003).

St. Paul also argues that Liberty is estopped from denying coverage because it did not defend CIPS under a reservation of rights or file a timely declaratory judgment action concerning its obligation to defend.  We disagree.  An "insurer has a duty to defend only when the complaint alleges facts which bring the case within or potentially within the policy coverage."
 Hawkeye Security Insurance Co. v. Hodorowicz
, 84 Ill. App. 3d 948, 952, 406 N.E.2d 146 (1980).  In this case, we concluded that the allegations in the underlying complaints fell within the "completed operations" exclusion and that Liberty did not have a duty to defend CIPS.  Consequently, Liberty is not estopped from denying coverage. 
Hawkeye
, 84 Ill. App. 3d at 952; 
Reis v. Aetna Casualty & Surety Co. of Illinois, 
69 Ill. App. 3d 777, 784, 387 N.E.2d 700 (1978) (when the allegations of the complaint show that the claim is beyond policy coverage, the insurer can safely and justifiably refuse to defend)
.

In light of our findings that the Liberty OCP and CGL policies do not provide coverage to CIPS for liability assessed against it in the underlying lawsuits, we need not address St. Paul's additional arguments regarding its entitlement to contribution and prejudgment interest.

Accordingly, for the reasons set forth above, we affirm the orders of the circuit court of Cook County granting summary judgment in favor of Liberty and against St. Paul.

Affirmed.

GARCIA, P.J., and SOUTH, J., concur.

FOOTNOTES
1: The underlying lawsuits, commonly referred to as the "
Philbrick
 cases," were consolidated for pretrial and trial in Madison County, Illinois.