First Division
June 18, 2007

No. 1-06-2121

| | |
|---|---|
| CLARENDON AMERICA INSURANCE COMPANY, a New Jersey Corporation, | ) Appeal from the Circuit Court of ) Cook County |
| Plaintiff-Appellee, | ) |
| v. | ) |
| AARGUS SECURITY SYSTEMS, INC., an Illinois Corporation, | ) |
| Defendant-Appellant | ) 04 CH 10575 |
| (Scottsdale Insurance Company, Intervenor-Appellee; | ) |
| B.G.K. Security Services, Inc., an Illinois Corporation, 69 West Washington Management LLC, an Illinois Limited Liability Corporation, and County of Cook, a Body Politic and Corporation, Defendants). | ) Honorable ) Julia Nowicki, ) Judge Presiding. |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff Clarendon America Insurance Co. (Clarendon) filed a declaratory judgment action seeking a determination that it owed no duty to defend or indemnify defendant Aargus Security Systems, Inc. (Aargus), in several underlying lawsuits arising out of the October 17, 2003, fire that occurred at a building owned by defendant County of Cook (Cook) and managed by defendant 69 West Washington Management, LLC (69 West), located at 69 West Washington Street in Chicago. Clarendon issued a commercial general liability (CGL) policy to defendant B.G.K. Security Services, Inc. (BGK), from which Aargus sought coverage as an "additional insured." Intervenor Scottsdale Insurance Company (Scottsdale) issued an excess insurance

policy to BGK and intervened in this action also seeking a declaration that it had no duty to defend Aargus. Clarendon filed a motion for summary judgment in the trial court. Scottsdale filed a brief in support of Clarendon's summary judgment motion. The court granted Clarendon's summary judgment motion against Aargus.[1]

Aargus appeals, arguing that: (1) the trial court erred in holding that the relevant contract, insurance provisions, and certificates of insurance were insufficient to demonstrate a potential for additional insured coverage for Aargus; and (2) in the alternative, the trial court incorrectly granted summary judgment in favor of Clarendon and Scottsdale because a genuine issue of material fact existed.

On April 1, 2002, Aargus entered into a contract, entitled "Agreement with Service Contractor" (hereafter, 69 West/Aargus Contract), with 69 West, acting as the manager and agent of Cook, to provide security guard service to the commercial high-rise building located at 69 West Washington Street in Chicago.

On June 17, 2002, Aargus and BGK entered into a contract entitled "Joint Venture Agreement, 69 West Washington Management Company, L.L.C., 69 West Washington, Chicago, IL 60602" (hereafter, Aargus/BGK Agreement) in which the parties agreed to jointly provide security guard service at the 69 West Washington building. The Aargus/BGK Agreement stated that "B.G.K. Security Services, Inc. shall serve as Aargus' exclusive subcontractor under the Contract." Paragraph 16 of the Aargus/BGK Agreement provided: "All insurance that may from

---

[1] In the same written order, the trial court granted summary judgment in favor of 69 West and Cook and against Clarendon. Clarendon appealed that order in case No. 1-06-1864.

time to time be required shall be obtained in such manner as the parties hereto agree."

BGK obtained a CGL policy from Clarendon, effective January 21, 2003, to January 21, 2004. The Clarendon policy provided $1 million of liability coverage per occurrence with a $5 million general aggregate limit. The Clarendon policy contains a "Blanket Additional Insured Endorsement" (additional insured endorsement), which states, in relevant part:

> "WHO IS AN INSURED (Section II) provision of the Policy is
> amended to include as an insured any person or organization
> (called 'additional insured') to whom you are obligated by valid
> written contract to provide such coverage, but only with respect to
> liability for 'bodily injury' or 'property damage' arising solely out
> of 'your work' on behalf of said additional insured for which
> coverage is provided by this policy."

Scottsdale issued an excess liability policy to BGK, effective August 1, 2003, to January 21, 2004. The Scottsdale policy "is excess of and follows form to the Clarendon policy."

In March and May 2003, Mack & Parker, Inc., an agent of BGK, issued two certificates of insurance to Aargus. The first certificate identified Aargus as "an Additional Insured as respects work performed" by BGK, and the second said that Aargus "is an Additional Insured as regards General Liability for operations performed" by BGK.

On October 17, 2003, a fire occurred at the 69 West Washington building. As a result of the deaths and injuries that occurred in the fire, 22 lawsuits were filed in the circuit court of Cook County and were consolidated under case No. 03 L 12520 (underlying lawsuits). Aargus, 69

West, Cook, and BGK were named as defendants, third-party defendants, and/or counter-defendants in the underlying lawsuits.

Aargus, 69 West, Cook, and BGK tendered the defense in the underlying lawsuits to Clarendon. In July 2004, Clarendon filed this declaratory judgment action seeking a determination that the Clarendon policy issued to BGK did not provide coverage to Aargus as an additional insured. Scottsdale was granted leave to intervene in the circuit court and filed its own complaint for declaratory judgment. In January 2006, Clarendon filed a motion for summary judgment. Scottsdale filed a brief in support of Clarendon's motion. In April 2006, the trial court granted Clarendon's motion. In June 2006, the trial court found that pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), there was no just reason to delay enforcement or appeal of the April 2006 order. This appeal followed.

On appeal, Aargus contends that the trial court erred in finding that the Aargus/BGK Agreement, the Clarendon policy and the certificates of insurance were insufficient to provide coverage to Aargus as an additional insured. In the alternative, Aargus asserts that a question of material fact exists regarding insurance coverage because of the Aargus/BGK Agreement and the certificates of insurances.

"The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 391 (1993). Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most

favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004). We review cases involving summary judgment *de novo*. Ragan v. Columbia Mutual Insurance Co., 183 Ill. 2d 342, 349 (1998).

"When construing the language of an insurance policy, a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy." Central Illinois Light Co. v. Home Insurance Co., 213 Ill. 2d 141, 153 (2004). "An insurance contract *** is to be construed as a whole, giving effect to every provision *** because it must be assumed that every provision was intended to serve a purpose." Central Illinois Light Co., 213 Ill. 2d at 153. "If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning." Central Illinois Light Co., 213 Ill. 2d at 153.

Aargus raises two theories for it to qualify as an additional insured under BGK's policies with Clarendon and Scottsdale. First, Aargus contends that the additional insured endorsement only requires an obligation to provide insurance from a valid written contract and that paragraph 16 satisfies that obligation. Second, if the certificates of insurance are considered alongside the Aargus/BGK Agreement, then an unambiguous intent for coverage is shown. Clarendon and Scottsdale maintain that paragraph 16 of the Aargus/BGK Agreement did not obligate BGK to provide insurance coverage for Aargus. Clarendon and Scottsdale further respond that the certificates of insurance do not satisfy the requirement of a valid written contract because the certificates plainly state that they do not confer any rights under the policy without an endorsement from the insurer.

5

Aargus relies on Yoder v. Rock Island Bank, 47 Ill. App. 3d 486 (1977), for its position that the decision by the parties "to leave open for future completion the details of additional insured coverage for Aargus does not invalidate the contractual obligation to do so that was assumed by BGK." We find Aargus' reliance on Yoder to be misplaced. Yoder involved whether a letter from an attorney in a foreclosure case was an offer subject to acceptance by specific performance by the other side. Yoder, 47 Ill. App. 3d at 490. Here, no one is arguing that the Aargus/BGK Agreement is not a valid contract. Rather, the issue is whether the Aargus/BGK Agreement contained an obligation undertaken by BGK to provide insurance coverage for Aargus.

We find the decision in Liberty Mutual Fire Insurance Co. v. St Paul Fire and Marine Insurance Co., 363 Ill. App. 3d 335 (2005), to be instructive. In that case, the Central Illinois Public Service Company (CIPS) and Dover Elevator Company (Dover) entered into two service contracts for Dover's work to modernize and upgrade two elevators in a CIPS facility. Dover obtained a CGL insurance policy through Liberty Mutual Fire Insurance Company (Liberty). An elevator accident occurred at the CIPS facility and a personal injury lawsuit followed. Liberty filed a declaratory judgment action seeking a determination that it did not have to defend CIPS under Dover's policies, and CIPS' insurer, St. Paul Fire and Marine Insurance Co. (St. Paul), filed a counterclaim requesting the trial court to find that Liberty had a duty to defend CIPS. On summary judgment, the trial court ruled in favor of Liberty. Liberty Mutual Fire Insurance Co., 363 Ill. App. 3d at 337-38.

On appeal, St. Paul argued that CIPS was made an additional insured under Dover's CGL

policy with Liberty. The additional insured endorsement in Liberty's policy amended an insured to include "any person, organization, state or other political subdivision, trustee or estate for whom you have agreed in writing to provide liability insurance." Liberty Mutual Fire Insurance Co., 363 Ill. App. 3d at 341. St. Paul contended that the two service contracts between CIPS and Dover constituted a written agreement, as defined in the additional insured endorsement. The insurance provision in both service contracts stated, in relevant part:

> " 'It is expressly understood and agreed by and between the parties
> hereto that no Work of any kind is authorized nor shall any Work
> be begun under this Contract until the Contractor shall have
> provided and delivered to the Owner satisfactory and acceptable
> evidence of insurance which is in full compliance with the
> Insurance Specifications attached hereto and incorporated by
> reference herein.' " Liberty Mutual Fire Insurance Co., 363 Ill.
> App. 3d at 341.

The insurance specifications provided that "contractors such as Dover 'will secure, maintain and provide evidence' of 'Comprehensive General Liability insurance for all claims for personal injury, bodily injury, including death, and property damage which may arise from the operations under this contract.' " Liberty Mutual Fire Insurance Co., 363 Ill. App. 3d at 341. St. Paul asserted that this language shows that Dover obtained the CGL policy for CIPS' benefit. The reviewing court disagreed and found that the insurance provision only required Dover to secure insurance to cover its own negligence. Liberty Mutual Fire Insurance Co., 363 Ill. App.

3d at 342. The court went on to state that "there was no language in the insurance provision or insurance specifications section that obligated Dover to add CIPS as an additional insured on the CGL policy." Liberty Mutual Fire Insurance Co., 363 Ill. App. 3d at 342.

Similarly, under the additional insured endorsement in the instant case, "an insured" is amended to include those that the named insured is "obligated by valid written contract to provide such coverage." The only valid written contract between BGK and Aargus is the Aargus/BGK Agreement from June 2002. However, the language of paragraph 16 ("All insurance that may from time to time be required shall be obtained in such manner as the parties hereto agree") does not discuss any obligation undertaken by either BGK or Aargus to provide insurance. When interpreting the provisions of a contract, the court must ascertain and give effect to the intent of the parties; and the language of the contract is the best indication of the parties' intent. Liberty Mutual Fire Insurance Co., 363 Ill. App. 3d at 341. "A contract term is ambiguous if it can reasonably be interpreted in more than one way due to the indefiniteness of the language or due to it having a double or multiple meaning." William Blair & Co., LLC v. FI Liquidation Corp., 358 Ill. App. 3d 324, 334 (2005). "A contract is not ambiguous, however, if a court can ascertain its meaning from the general contract language." William Blair, 358 Ill. App. 3d at 334. "[T]he mere fact that the parties disagree as to the meaning of a term does not make that term ambiguous." William Blair, 358 Ill. App. 3d at 334.

We disagree with Aargus' assertion that paragraph 16 creates an obligation for insurance coverage to satisfy the requirements under the additional insured endorsement. Rather, we conclude that paragraph 16 leaves the insurance obligations of both contracting parties

undecided. As in Liberty Mutual, paragraph 16 does not indicate what insurance is required by either party and we decline to read paragraph 16 to create any coverage obligations. Based on the language of paragraph 16, we find that Aargus was not an additional insured under BGK's policies with Clarendon and Scottsdale.

Aargus also contends that the certificates of insurance along with the Aargus/BGK Agreement show BGK's intent to provide additional insured coverage to Aargus. According to Aargus, "when the certificates are considered, it is clear that BGK unambiguously intended by the Aargus/BGK Contract to assume an obligation to provide additional insured coverage for Aargus." Clarendon and Scottsdale respond that the certificates of insurance do not satisfy the additional insured endorsement because a certificate of insurance does not constitute a contract between the parties. See Lezak & Levy Wholesale Meats, Inc. v. Illinois Employers Insurance Co. of Wausau, 121 Ill. App. 3d 954, 957 (1984). In reply, Aargus restates its position, in that, it is not claiming that the certificates of insurance qualify as a valid written contract under the additional insured endorsement, but instead, the certificates serve as "documentary confirmation that BGK agreed to provide coverage for Aargus."

Aargus cites William Blair & Co., LLC v. FI Liquidation Corp., 358 Ill. App. 3d 324, 339 (2005), as a basis for this court to consider the certificates "as extrinsic evidence *** on a provisional basis for the limited purpose of testing whether [the] contract is ambiguous." Aargus does not assert that the Aargus/BGK Agreement is ambiguous or that the certificates vary the contract terms, but instead the certificates confirm that BGK agreed to provide coverage for Aargus.

However, the problem with Aargus' argument is that the plain language of paragraph 16 does not require BGK to add Aargus as an additional insured under its policies. In the absence of ambiguity, a court must construe a contract according to its own language, not according to the parties' subjective constructions. William Blair, 358 Ill. App. 3d at 335. The existence of the certificates does not change the fact that the Aargus/BGK Agreement does not discuss insurance requirements for either party. Paragraph 16 left insurance requirements open for future agreements and we will not look to documents outside of the contract to create an obligation. As previously pointed out, Aargus does not qualify as an additional insured under the Clarendon policy and the certificates do not change that holding. Additionally, since the certificates of insurance are not contracts (see Lezak & Levy Wholesale Meats, Inc., 121 Ill. App. 3d at 957), they are not sufficient to prove that BGK had an obligation under a valid written contract to provide coverage for Aargus.

Aargus further contends that the trial court's reasoning in its ruling against Clarendon and in favor of 69 West and Cook, which is the subject of a separate appeal in case No. 1-06-1864, should be extended to Aargus. In that portion of the order, the trial court read the Aargus/BGK Agreement and the 69 West/Aargus Contract together to "satisfy the written contract requirement of the Clarendon and Scottsdale policies." Aargus' reliance on the trial court's order as to those defendants is not persuasive. "Under Illinois law, the decisions of circuit courts have no precedential value." Delgado v. Board of Election Commissioners of the City of Chicago, 224 Ill. 2d 481, 488 (2007).

As an alternative argument, Aargus asserts that a genuine issue of material fact exists that

makes summary judgment inappropriate. Aargus contends that "the certificates, if viewed in the light most favorable to the non-movant, evince an agreement between Aargus and BGK that Aargus should be added as an additional insured under Clarendon's policy."

"The purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine issue of material fact exists." Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 42-43 (2004). "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." Adams, 211 Ill. 2d at 43. "Summary judgment should not be granted unless the right of the moving party is clear and free from doubt." Michigan Avenue National Bank v. County of Cook, 191 Ill. 2d 493, 517 (2000). "However, although the nonmoving party in a summary judgment motion is not required to prove his or her case, the nonmovant must nonetheless present a factual basis which would arguably entitle that party to a judgment." Michigan Avenue National Bank, 191 Ill. 2d at 517-18.

Aargus tries to avoid summary judgment by arguing that summary judgment was premature. In its view, there is a question of material fact as to whether Aargus and BGK executed in writing an agreement about insurance. Aargus asserts that it should have had the opportunity to determine whether such agreement exists. We are not persuaded.

It seems clear that Aargus itself should know if it entered into a subsequent written agreement with BGK. The fact that no such agreement was produced should not preclude summary judgment. Here, the additional insured endorsement confers coverage on those that the named insured is obligated by valid written contract to provide such coverage. The Aargus/BGK

11

Agreement is the only written contract between the parties and does not obligate BGK to provide additional insured coverage for Aargus. The Aargus/BGK Agreement left the insurance requirements open to a future agreement. This provision is unambiguous. There is no indication that a subsequent written agreement about insurance exists. Aargus' reliance on the certificates of insurance to create a question of material fact is misplaced because the certificates are not contracts and cannot alter the fact that the written contract does not contain an obligation to provide for additional insured coverage. There is no question of material fact and summary judgment in favor of Clarendon and Scottsdale was correct.

Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

CAHILL and R. GORDON, JJ., concur.