563 P.2d 979 (1977)
Scott M. EDWARDS, Plaintiff-Appellant,
v.
ST. PAUL TITLE INSURANCE CO., a Missouri Corporation doing business in Colorado, Defendant-Appellee.
No. 76-104.
Colorado Court of Appeals, Division 1.
April 21, 1977.
Mann & Flair, Roger N. Flair, Stanley K. Mann, Boulder, for plaintiff-appellant.
Hutchinson, Black, Hill, Buchanan & Cook, John A. Purvis, Boulder, for defendant-appellee.
VanCISE, Judge.
Plaintiff, Scott M. Edwards, appeals the order denying his motion for summary judgment and granting a summary judgment in favor of defendant, St. Paul Title Insurance Corporation. We affirm.
*980 In 1967, St. Paul issued to Edwards a title insurance binder and then a policy on property purchased by him in Boulder County. No mention was made either in the binder or in the policy that the property was situated within the Fairways Water and Sanitation District. This district had been formed and a copy of the decree evidencing its formation had been filed with the county clerk and recorder in 1965. The first levy for ad valorem taxes against the property in the district was made in 1969 and 1970, with the rate being 252 and 226 mills, respectively, resulting in a total of $4,407.16 in district taxes charged against the Edwards property.
In his complaint, Edwards sought damages for the diminution in the value of his property because of being in the district and for the amount of the 1969, 1970, and any future district taxes. He claimed in his pleading and on this appeal that inclusion in the district and the consequent exposure to assessment for district taxes was a "defect in or lien or encumbrance on the title" or rendered the title unmarketable and that, therefore, St. Paul was liable to him under the policy. He withdrew his additional claim based on negligence. On stipulated facts, the parties submitted their respective summary judgment motions, and the court held for St. Paul based on the policy.
Any liability of St. Paul to Edwards must rest on the insurance contract. Arapahoe Land Title, Inc. v. Contract Financing, Ltd., 28 Colo.App. 393, 472 P.2d 754 (1970). The policy provides, in pertinent part, coverage for:
"1. Any defect in or lien or encumbrance on the title to the estate or interest covered hereby in the land described... existing at the date hereof, not shown or referred to in Schedule B or excluded from coverage in Schedule B or in the Conditions and Stipulations; or
"2. Unmarketability of such title. . ..
. . . all as of the date of this policy." The "Schedule B" refers to "defects, liens or encumbrances and other matters against which the company does not, by this policy, insure," including:
"Taxes and assessments not yet due or payable and Special Assessments not yet certified to the Treasurer's office."
Considering the policy provisions, we see no basis for liability on the part of St. Paul.
Absent any statutory provision, the district taxes would not be liens against the property. See People v. City and County of Denver, 85 Colo. 61, 273 P.2d 883 (1928); Board of Commissioners v. Whitt, 74 Colo. 129, 219 P. 217 (1923). By §§ 39-1-105 and 107, and 32-4-117, C.R.S.1973, the district taxes for the current year, as part of the general taxes, are a lien against the property in the district until paid. However, in 1967, when Edwards purchased his property and the policy was issued, there were no district taxes or assessments due or payable or certified to the treasurer's office, and thus there was obviously no lien against the property for such taxes. The 1969 and 1970 taxes were certified and levied two years after the date of the policy and were, therefore, excluded from coverage.
It follows that if it requires specific legislation for even the current year's taxes to be a lien on the property, the mere existence of the district and the prospect of taxes in the future was not a lien, encumbrance, or defect as of the date of issuance of the policy. See Doonan v. Killilea, 222 N.Y. 399, 118 N.E. 851 (1918); Cemansky v. Fitch, 121 Iowa 186, 96 N.W. 754 (1903).
Nor does the fact that Edwards' property is in the district render Edwards' title unmarketable. The value of the property is undoubtedly affected by the amount of the district taxes, but this has nothing to do with the title to the property and the marketability of the title. See Sperling v. Title Guarantee & Trust Co., 227 App.Div. 5, 236 N.Y.S. 553 (1929), aff'd, 252 N.Y. 613, 170 N.E. 163 (1930). To be marketable, "`[t]he title must be such as to make it reasonably certain that it will not be called into question in the future so as to subject *981 the purchaser to the hazard of litigation with reference thereto.'" Morley v. Gieseker, 142 Colo. 490, 351 P.2d 392 (1960); Michaelson v. Tieman, 36 Colo.App. 435, 541 P.2d 91 (1975). Here, except for the lien of Edwards' own purchase money deed of trust, there is nothing in the record to show any foreseeable challenge to Edwards' title to, or his right to possession and quiet enjoyment of, all of his property. Also, in no way has any of his land been reduced in size or in use.
St. Paul did not contract to indemnify Edwards against loss due to district taxes or assessments to be levied against his property after the date of the policy. See Metropolitan Life Insurance Co. v. Union Trust Co., 283 N.Y. 33, 27 N.E.2d 225 (1940). Consequently, the trial court correctly determined that the existence of the district "does not constitute a defect, lien, or encumbrance on the title to the property, nor does it render the title unmarketable."
Judgment affirmed.
COYTE and SMITH, JJ., concur.