**FIRST DIVISION**
May 17, 2010

No. 1-09-1216

| | | |
|---|---|---|
| RAY H. RHONE and DENISE RHONE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 08 CH 20714 |
| FIRST AMERICAN TITLE INSURANCE | ) | |
| COMPANY, a California | ) | |
| Corporation, | ) | The Honorable |
| | ) | Daniel A. Riley, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE GARCIA delivered the opinion of the court.

The plaintiffs, Ray and Denise Rhone (the Rhones), filed a two-count complaint against defendant First American Title Insurance Company (First American), the issuer of a title insurance policy on the townhome they purchased in 2006. Count I sought a declaration that the policy covered unassessed property taxes for the years 2004 and 2005; count II sought special damages because First American's denial of the Rhones' claim for reimbursement of those taxes was "vexatious and unreasonable." The parties filed cross-motions for summary judgment. First American contended the policy did not cover the taxes because they were levied after the date the policy was issued and, in any

event, the policy specifically exempted such taxes.  Judge Daniel A. Riley granted First American's motion and denied the Rhones'.

We hold that the unassessed taxes did not constitute liens or encumbrances until the bills for the unassessed property taxes were issued in 2008, well after the effective date of the title insurance policy of August 31, 2006.  Consequently, we affirm.

BACKGROUND

On August 31, 2006, the Rhones closed on their $800,000 purchase from the original owners of a three-year-old townhome at 1417 South Campus Parkway in Chicago.  At the closing, First American issued an owner's title insurance policy.  The policy insured the Rhones against losses caused by "[a]ny defect in or lien or encumbrance on the title" as of August 31, 2006, subject to several specified exceptions and exclusions.  Although the policy listed several "standard exceptions" to coverage, including "Taxes, or special assessments which are not shown as existing liens by the public records," First American waived those exceptions through an endorsement.

In her deposition, Denise Rhone testified that at closing she and her husband were aware that Cook County had assessed the townhome as "vacant land" from 2004 through 2006, the years the sellers lived in the home.  Based on the improper assessment, the Rhones were well aware that the property taxes "were going to

increase." However, Denise Rhone testified that she "didn't know anything about omitted taxes."

Concerned with the potential property tax increase because the townhome was not assessed as improved property at the time of their purchase contract, the Rhones had their attorney contact Kent Novit, the sellers' attorney and "issuing agent" on the Rhones' title commitment policy. In their letter to Novit, dated August 14, 2006, 17 days before closing, the Rhones pointed out that a neighboring "comparable property" was assessed for nearly $9,000 more in property taxes for the tax year 2005 than the townhome to be purchased. To assuage the Rhones' concerns, at closing the parties signed a "tax reproration agreement," which required the sellers to place $10,000 in escrow to cover the sellers' share of any additional taxes due for 2006. Under the agreement, a tax reproration between the parties would occur if the townhome were reassessed as improved property before March 31, 2008. However, the agreement did not address any additional real estate taxes that might arise from reassessment for 2004 and 2005, when the property was also taxed as vacant land. In other words, the agreement did not apportion any additional property tax liability should the property be reassessed as improved land for the years prior to 2006 (the unassessed taxes).

In February 2008, the Rhones received two tax bills from the

1-09-1216

Cook County assessor titled "2007 Omitted Assessment Property Tax Bill." The bills indicated that the townhome was not assessed as improved land in 2004 and 2005 and sought, from "D. Rhone or Current Owner," additional unassessed taxes for the two years. The tax bill for 2004 sought $2,763.58; the tax bill for 2005 sought $6,600.09. Each bill indicated the amount due was "entered as a warrant [in the County Collector's warrant book] in Tax Year 2007 [payable in 2008]."

On February 12, 2008, the Rhones' attorney filed a claim with First American under the title insurance policy seeking indemnification for the unassessed taxes. First American denied the claim, explaining in a letter dated April 4, 2008, that the unassessed taxes "are not due and payable until 2008 and are therefore, not a matter covered by the title policy."

On June 10, 2008, the Rhones filed a two-count complaint against First American, seeking a declaration that the title insurance policy covered the unassessed taxes and special damages under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2008)). The parties filed cross-motions for summary judgment. Judge Riley granted summary judgment in favor of First American; the Rhones timely appeal.

ANALYSIS

Summary judgment is warranted when "the pleadings,

4

1-09-1216

depositions, and admissions on file, together with any affidavits, when viewed in the light most favorable to the nonmovant, reveal there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Midwest Trust Services, Inc. v. Catholic Health Partners Services, 392 Ill. App. 3d 204, 209, 910 N.E.2d 638 (2009), citing 735 ILCS 5/2-1005(c) (West 2000).  Our review of a grant of summary judgment is de novo.  DeSaga v. West Bend Mutual Insurance Co., 391 Ill. App. 3d 1062, 1066, 910 N.E.2d 159 (2009).

Because the facts are not in dispute, this case presents only a question of law as to which party is entitled to summary judgment.  See Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co., 363 Ill. App. 3d 335, 339, 842 N.E.2d 170 (2005) ("where the parties file cross-motions for summary judgment, they invite the court to decide the issues presented as a matter of law").  In their declaratory judgment count, the Rhones contend that Judge Riley should have granted their motion because the unassessed taxes constitute a defect, lien, or encumbrance under the Rhones' title insurance policy.  First American responds that under the Property Tax Code (the Tax Code) (35 ILCS 200/1-1 et seq. (West 2008)), the unassessed taxes reflected in the two tax bills become liens against the property

5

only as of the year the taxes are levied. In other words, the unassessed taxes for 2004 and 2005 become liens only "in Tax Year 2008," as First American asserts; it is illogical to treat the unassessed taxes as levied in 2004 and 2005, when actual taxes were levied, albeit as vacant land, and fully paid in those years. According to First American, because the unassessed taxes did not achieve lien status until 2008, the unassessed taxes do not fall within the ambit of the policy, which insured only against "any defect in or lien or encumbrance on the title" as of the date the policy was issued, August 31, 2006. First American adds, even if the unassessed taxes constituted a defect, lien, or encumbrance before the policy was issued, the policy specifically excluded such taxes from coverage.

"Real estate taxes can only be levied, assessed and collected in the manner expressly required by statute." In re County Collector of Will County for Judgment for Taxes for the Year 1988, 229 Ill. App. 3d 641, 643, 593 N.E.2d 1134 (1992), citing People ex rel. Pickerill v. New York Central R.R. Co., 391 Ill. 377, 63 N.E.2d 405 (1945). In Illinois, the Tax Code controls "the basis upon which real property is valued for purposes of collecting property tax revenue." Walsh v. Property Tax Appeal Board, 181 Ill. 2d 228, 230, 692 N.E.2d 260 (1998). The Tax Code provides that "the taxes upon property *** shall be

6

a prior and first lien on the property *** from and including the first day of January in the year in which the taxes are levied." 35 ILCS 200/21-75 (West 2008). Thus, property owners are issued a tax bill at the beginning of each year for taxes owed for the preceding year; pursuant to the Tax Code, the tax bill is a lien as of January 1 of the year in which it is issued.

Pursuant to statute, the Cook County assessor has the authority, as a county with a population of 3 million or more, to "assess properties which may have been omitted from assessments for the current year or during any year or years for which the property was liable to be taxed, and for which the tax has not been paid." 35 ILCS 200/9-260(a) (West 2008). Such an "omitted assessment tax bill is not due until the date on which the second installment property tax bill for the preceding year becomes due." 35 ILCS 200/9-260(b) (West 2008). Thus, for years when taxes have been paid, the property may nonetheless be subject to additional taxes if no taxes were assessed on land improvements. People ex rel. McDonough v. Birtman Electric Co., 359 Ill. 2d 143, 145, 194 N.E.2d 282 (1934) ("if no assessment was made[,] *** an assessment of the omitted property [may be made] in a subsequent year"). As a safeguard against unforeseen additional taxes, " 'the legislature has provided that no charge for tax for previous years shall be made against any property prior to the

7

date of ownership of the person owning such property at the time the liability for such omitted tax was ascertained.' " Inland Real Estate Corp. v. Oak Park Trust & Savings Bank, 127 Ill. App. 3d 535, 545, 469 N.E.2d 204 (1983), quoting McDonough, 359 Ill. 2d at 148. The section insulating a new owner from unassessed taxes prior to ownership requires ownership be of "bona fide legal and equitable titles or interests acquired for value and without notice of the tax." (Emphasis added.) 35 ILCS 200/9-270 (West 2008).

The Rhones do not claim to be without notice that the property was improperly assessed as vacant land at the time of purchase, nor can they. In a letter to the sellers' attorney dated August 14, 2006, the Rhones, through their attorney, asserted that the townhome "is not currently assessed properly. *** Attached is [a] data sheet from the [Cook County] Assessor's web site showing the Unit as being taxed as vacant land. *** I have attached the Assessor's data sheet for and the most recent tax bill ($10,990.33) for the neighboring unit[, 1415 S. Campus]." In a similar letter dated October 24, 2006, to the Cook County assessor, the Rhones gave notice that "the Property is currently being taxed as vacant and unimproved property when in fact it is improved with a [townhome] residence." It appears the Rhones sent notice to the Cook County assessor in an attempt

8

to shield themselves against any "charge for tax of previous years *** [by giving] notice of subsequent improvements." 35 ILCS 200/9-270 (West 2008). However, the "no charge" provision only applies if "reassessment of the property was not made within the 16 month period immediately following the receipt of that notice." 35 ILCS 200/9-270 (West 2008). The Rhones make no claim that the reassessment of the property resulting in the charge for unassessed taxes covering 2004 and 2005 fell outside the 16-month period. Nor does it appear the Rhones qualify as good-faith purchasers regarding the unassessed taxes because they had "notice of the possibility of [unassessed] taxing" when they purchased the townhome. Inland, 127 Ill. App. 3d at 546; 35 ILCS 200/9-270 (West 2008). It is this knowledge that spurred the Rhones to enter into a tax reproration agreement with the sellers regarding an increase in property taxes for the year 2006.

Lien or Encumbrance

Upon receipt of the "2007 Omitted Assessment Property Tax Bill[s]," the Rhones paid the unassessed taxes. They are now seeking indemnification from First American. We initially address whether the unassessed taxes covering 2004 and 2005 constitute a "lien or encumbrance" under the policy. If the title was so clouded on the date the policy was issued, August 31, 2006, the Rhones are entitled to summary judgment if none of

the exceptions or exclusions apply. If the unassessed taxes do not constitute a "lien or encumbrance" as of the date of the policy, Judge Riley properly granted First American's summary judgment motion.

As noted above, the Tax Code provides that property taxes constitute "a prior and first lien on the property *** from and including the first day of January in the year in which the taxes are levied." 35 ILCS 200/21-75 (West 2008). The Tax Code makes plain that a bill for unassessed taxes "is not due until the date on which the second installment property tax bill for the preceding year becomes due." 35 ILCS 200/9-260(b) (West 2008). It is undisputed that the Rhones' unassessed taxes were added to the tax bill for 2007 and were not due until the second installment came due in 2008. Thus, under the Tax Code, the additional taxes based on the reassessment constituted liens in the year in which they were levied, 2008, rather than the years for which they were levied, 2004 and 2005. The Rhones do not dispute that the tax liens arose long after the First American title policy was issued in 2006 and, as liens, are not covered by the policy.

The Rhones contend, however, that the title was "encumbered" on or before the title insurance policy was issued. They contend that at the time they purchased the townhome, although Cook

10

County had not exercised its authority to recalculate the 2004 and 2005 real estate property taxes based on a new assessment of the property as improved land, it was virtually certain to do so. Additional taxes would be due because the land was improved as the sellers lived in the townhome in 2004 and 2005. According to the Rhones, the authority of Cook County to reassess the property, though unexercised on the day of closing, nonetheless constituted an encumbrance on the property separate and distinct from any future tax liens. While the liens arose in 2008 when the county issued the corrected tax bills based on the proper assessment for the years 2004 and 2005, the Rhones allege that an encumbrance for unassessed taxes existed at the time the policy was issued on August 31, 2006.[1]

We acknowledge the distinction in case law between a lien and an encumbrance. A lien is a " 'legal right or interest that a creditor has in another's property, lasting usu[ally] until a debt or duty that it secures is satisfied.' " Compton v. Country

---

[1] The Rhones do not provide a precise date on which they claim the encumbrance arose; presumably, the encumbrance existed as of the date of the letter to Novit, the sellers' attorney and the "issuing agent" of the First American title commitment, on August 14, 2006, detailing that the property was assessed as vacant land.

Mutual Insurance Co., 382 Ill. App. 3d 323, 329, 887 N.E.2d 878 (2008), quoting Black's Law Dictionary 933 (7th ed. 1999). An encumbrance is broader. It may include " 'any right to, or interest in, land which may subsist in a third party to the diminution of the value of the estate, but consistent with the passing of the fee by conveyance.' " Village of Buffalo v. Illinois Commerce Comm'n, 180 Ill. App. 3d 591, 597, 536 N.E.2d 438 (1989), quoting Monti v. Tangora, 99 Ill. App. 3d 575, 580, 425 N.E.2d 597 (1981). Encumbrances " 'include not merely liens such as mortgages, judgment liens, [or] taxes *** but also attachments, leases, inchoate dower rights, water rights, easements, restrictions on use, or any right in a third party which diminishes the value or limits the use of the land granted.' " Village of Buffalo, 180 Ill. App. 3d at 597, quoting Monti, 99 Ill. App. 3d at 580-81.

Together with the broad scope of "encumbrance," the Rhones rely on express language in Inland to support their claim that the unassessed taxes fall within the title policy coverage.

In Inland, Stanley DeFurgalski entered into an agreement to sell an apartment building to individuals that eventually conveyed their interest into a land trust (collectively, the owner-defendants). In December 1972, DeFurgalski agreed to convey fee simple title "free and clear of all liens,

12

encumbrances, restrictions, easements and leases of any nature whatsoever" (Inland, 127 Ill. App. 3d at 537), in exchange for a 15-year note, which DeFurgalski "sold and assigned to Inland Real Estate Corporation." Inland, 127 Ill. App. 3d at 538.

In October 1978, the Cook County assessor billed the owner-defendants $128,584.51 in taxes, interest and penalties triggered by omitted assessments for the three years preceding the sale. Inland, 127 Ill. App. 3d at 538. The property had been assessed as improved with single-family residences, rather than with the 63-unit apartment building located on the property at the time of sale. Inland, 127 Ill. App. 3d at 544. Believing these taxes constituted a violation of the agreement to convey the property "free and clear" of all liens and encumbrances, the owner-defendants stopped making payments on the note, and Inland, as the then noteholder, filed suit to foreclose. Inland, 127 Ill. App. 3d at 538. Numerous counterclaims, setoffs, and third-party actions, including against the county assessor and collector, substantially enlarged the original foreclosure action. Inland, 127 Ill. App. 3d at 538-39. Ultimately, the circuit court granted summary judgment to the owner-defendants on their setoff claims and counterclaims, and Inland appealed. Inland, 127 Ill. App. 3d at 539-40.

This court reversed that portion of the circuit court's

13

judgment in favor of the original buyers, which, in part, granted a setoff of the additional taxes of $128,584.51 against the balance of the purchase price of the property. We issued a remand to resolve a material question of fact. Because the record was barren of any evidence that the owner-defendants had notice that the property was improperly assessed for the three years preceding sale of the property by DeFurgalski, remand was required to determine whether the buyers were good-faith purchasers under then section 221 of the Revenue Act of 1939 and thus insulated from the additional taxes. Inland, 127 Ill. App. 3d at 544-45, citing Ill. Rev. Stat. 1979, ch. 120, par. 702. The court added its view that if the additional taxes were "a lawful claim or demand enforceable against [the original buyers], then the unexercised authority of [the county assessor and collector] to impose the back taxes constituted an incumbrance on the property at the time of transfer" from DeFurgalski to the original buyers. Inland, 127 Ill. App. 3d at 541. It is this language that the Rhones rely upon to assert their claim of the existence of an "incumbrance" on or before the date of purchase regarding the unassessed taxes by the Cook County assessor.

Inland is plainly distinguishable from the case at bar. The Inland court had no occasion to address the meaning or purpose of the term "encumbrance" in a title insurance policy. Instead,

14

1-09-1216

Inland dealt with an appeal from the grant of summary judgment in favor of the property buyers, granting the buyers a setoff and counterclaim for their payments of back taxes for the time the seller retained ownership of the property. Inland, as plaintiff and assignee of the seller, stood in the shoes of the seller regarding the claims of the buyers that the back taxes on the property encumbered the title the buyers obtained from the seller. Inland, 127 Ill. App. 3d at 541-42, citing King v. Harpster, 306 Ill. 202, 209, 137 N.E. 823 (1922), and Miller v. Frederick's Brewing Co., 405 Ill. 591, 596, 92 N.E. 108 (1950). The guarantee in Inland to convey clear title bears no resemblance to an indemnification title insurance policy protecting buyers against unknown defects in title as of the date of its issuance.

Nor are we persuaded that the dictum in the Inland decision, that the "unexercised authority" of a county assessor to charge unassessed taxes constitutes an "incumbrance" prior to the tax lien that arises when omitted taxes are levied, should be extended to the use of "encumbrance" in a title insurance policy. The dissent questions our determination that the "unexercised authority" language is dictum. Slip op. at 30. The holding of Inland is that a material question of fact mandated further proceedings in the circuit court. The characterization of the

15

"unexercised authority" on the part of the collector regarding the unassessed taxes as an "incumbrance" was unnecessary for this court's remand of the matter to the circuit court. The Inland court itself noted that if, on remand, the claim of the county defendants for back taxes was determined to be an "[un]lawful claim" against the original buyers, then the property was not encumbered at the time of sale. Inland, 127 Ill. App. 3d at 541. Hence, whether the "unexercised authority" of the county defendants constituted an encumbrance would turn on the lawfulness, or not, of the claim for unassessed taxes upon remand; the "unexercised authority" language in the Inland decision was obiter dictum. See Excelon Corp. v. Department of Revenue, 234 Ill. 2d 266, 277, 917 N.E.2d 899 (2009) (" 'A dictum is "any statement made by a court for use in argument, illustration, analogy or suggestion. It is a remark, an aside, concerning some rule of law or legal proposition that is not necessarily essential to the decision" ' "), quoting United States v. Crawley, 837 F.2d 291, 292, (7th Cir. 1988), quoting Stover v. Stover, 60 Md. App. 470, 476, 483 A.2d 783, 786 (1984). Consistent with our view is the absence of cited authority following the "unexercised authority" language in Inland.

Because the question pending before the Inland court was a narrow one, which mandated a remand, we are unpersuaded that its

16

language should reach beyond its facts. See <u>Temesvary v. Houdek</u>, 301 Ill. App. 3d 560, 567, 703 N.E.2d 613 (1998) ("the statements contained in [cited] cases limiting the authority of the trial court to reduce the amount of a lien are <u>dicta</u> insofar as the present case is concerned and are not binding on the decision we reach on the issue before us in this case").

The Rhones' reliance upon <u>McLaughlin v. Attorneys' Title Guaranty Fund, Inc.</u>, 61 Ill. App. 3d 911, 378 N.E.2d 355 (1978), is also misplaced, though the case provides guidance on the duty of a title insurer to discover a lien. In <u>McLaughlin</u>, Minnie Witte Knuppel granted the plaintiffs an option to purchase certain property she owned upon her death. <u>McLaughlin</u>, 61 Ill. App. 3d at 913. Following Ms. Knuppel's death, the plaintiffs exercised the option. Pursuant to court order, the estate, at its expense, retained the defendant to issue a policy of title insurance. <u>McLaughlin</u>, 61 Ill. App. 3d at 913. When inheritance taxes were later charged against the plaintiffs, they filed suit against the defendant, "alleging a defect in title which was covered by the policy." <u>McLaughlin</u>, 61 Ill. App. 3d at 914. The judgment in the plaintiffs' favor after a bench trial was upheld. <u>McLaughlin</u>, 61 Ill. App. 3d at 917. The court of review determined the title insurer assumed "a duty to search the records and examine the applicable law before issuing its

17

commitment or policy." McLaughlin, 61 Ill. App. 3d at 916. "[T]he failure of the defendant to specify the inheritance tax as an exclusion to the coverage of the policy [left] the defendant open to liability for the undiscovered defect in title." McLaughlin, 61 Ill. App. 3d at 916.

We agree with the holding in McLaughlin that a title insurer has a duty to search the public records and, when presented with a request for a title insurance policy by an estate, the issuer of the policy must take note that a "distribution out of *** [an] estate" may trigger an inheritance tax. McLaughlin, 61 Ill. App. 3d at 913. As the McLaughlin court made clear, "The lien for inheritance tax was determinable by the defendant, and it should have been determined." (Emphasis added.) McLaughlin, 61 Ill. App. 3d at 916.

So too here, had the unassessed taxes given rise to liens at the time of closing, First American would bear the duty to discover such liens. However, as we made clear, no liens for unassessed taxes existed at the time of closing. The McLaughlin court also expressed that "the lien was not created, suffered or permitted by the plaintiffs." McLaughlin, 61 Ill. App. 3d at 916. By virtue of their letters to the sellers and the Cook County assessor, in which they acknowledged the townhome had been improperly assessed in 2004 and 2005 as vacant land, it is

18

doubtful that what the <u>McLaughlin</u> court expressed about the plaintiffs can be said of the Rhones.

In any event, we find <u>McLaughlin</u> to be of no aid to the Rhones as it involved a defect in title based on the existence of a lien and no such claim can be made here. We decline the Rhones' invitation to read <u>McLaughlin</u> to imply a broad duty on the part of First American to discover not only potential unassessed taxes, of which the Rhones were admittedly aware, but also to treat taxes not yet levied as liens that should have been "determined" by the title insurer.

Rather, we look to cases involving a contest of title insurance coverage based on a claimed encumbrance to determine whether the "unexercised authority" of a county assessor to charge unassessed taxes should give rise to an encumbrance as that term is used in a title insurance policy. The specific question before us is whether unassessed property taxes may constitute an encumbrance prior to the taxes being levied; that is, whether an encumbrance exists before a lien arises from a tax levy, as provided by the Tax Code.

For the reasons we make clear below, in the context of a title insurance policy, we reject the Rhones' reliance on a broad use of the term "encumbrance" to bring their claim regarding unassessed and unlevied taxes within the title policy. We hold

19

that by operation of the Tax Code, the bills regarding the unassessed taxes acquired status as tax liens on January 1, 2008. The additional tax bills for 2004 and 2005, based on the 2007 reassessment of the property as improved, could not constitute an encumbrance on the title by way of any "unexercised authority" of the Cook County assessor on or before August 31, 2006. To hold otherwise would so enlarge the term "encumbrance" to make it virtually impossible to determine whether an encumbrance exists at the time a title insurance policy is issued.

While we do not find any Illinois cases that address the precise issue before us, courts in other states have rejected similar claims seeking indemnification for unassessed taxes under title insurance policies. See Butcher v. Burton Abstract Title Co., 52 Mich. App. 98, 216 N.W.2d 434 (1974); Edwards v. St. Paul Title Insurance Co., 39 Colo. App. 235, 563 P.2d 979 (1977). Although the decisions of foreign courts are not binding, "the use of foreign decisions as persuasive authority is appropriate where Illinois authority on point is lacking or absent." Carroll v. Curry, 392 Ill. App. 3d 511, 517, 912 N.E.2d 272 (2009); see also People v. $111,900, United States Currency, 366 Ill. App. 3d 21, 30, 851 N.E.2d 813 (2006) (in the absence of Illinois cases setting forth guidelines to analyze the issue in the case, "cases from other jurisdictions [are] instructive").

In the Michigan case, the defendant issued a title insurance policy on property the plaintiffs purchased in 1966. Butcher, 52 Mich. App. at 99, 216 N.W.2d at 434. The policy covered any " 'failure or unmarketability of the title *** excepting only such liens, incumbrances and other matters as set forth' " elsewhere in the policy. Butcher, 52 Mich. App. at 99, 216 N.W.2d at 434. Fourteen months after the policy was issued, the plaintiffs were billed by their township for several ad valorem taxes and a special assessment. The plaintiffs filed suit contesting the charges and made a demand under the title policy that the defendant enter the litigation initiated by the plaintiffs "and defend their property against the alleged encumbrances not excepted by the policy." Butcher, 52 Mich. App. at 101, 216 N.W.2d at 435. The Michigan court determined the question before it to be "whether the charges placed against plaintiffs' property by the township *** constitute encumbrances within the meaning of that term as used in the title insurance policy contract." Butcher, 52 Mich. App. at 101, 216 N.W.2d at 435-36.

The Butcher court held that the charges did not constitute an encumbrance at the time the title insurance policy was issued and hence were not covered by it. Butcher, 52 Mich. App. at 102, 216 N.W.2d at 436. "Granting that the broadest definition of the

21

word 'encumbrance' might include prospective charges, the general rule is that a special assessment does not become an encumbrance until it has achieved lien status. [Citations.] Furthermore, ad valorem taxes not yet due are not liens or encumbrances within the meaning of a title insurance policy." Butcher, 52 Mich. App. at 101-02, 216 N.W.2d at 436. The Michigan court quoted language from a New York case:

> " 'Title insurance operates to protect a purchaser or a mortgagee against defects in or incumbrances on a title existing at the date of such insurance. It is not prospective in its operation and has no relation to liens or requirements arising thereafter.
>
> It follows, we think, that [the title insurance company] no more agreed with plaintiff to protect him against liability for the unpaid assessment in question than it undertook to indemnify him for taxes to be levied against the premises after delivery of its certificate of title insurance.' " Butcher, 52 Mich. App. at 101, 216 N.W.2d at 436, quoting Mayers v. Van Schaick, 268 N.Y.

22

320, 323-24, 197 N.E. 296, 297-98 (1935). Consistent with the New York case, the <u>Butcher</u> court concluded, "Since none of the charges *** were either due or liens at the date of the issuance of the title insurance policy, they do not constitute liens or encumbrances within *** the policy terms." <u>Butcher</u>, 52 Mich. App. at 101, 216 N.W.2d at 436.

In the Colorado case, the plaintiff obtained a title insurance policy from the defendant covering " '[a]ny defect in or lien or encumbrance on the title' " as of the date the plaintiff purchased the subject property in 1967. <u>Edwards</u>, 39 Colo. App. at 236, 563 P.2d at 980. In 1969 and 1970, a water and sanitation district levied <u>ad valorem</u> taxes against the property. <u>Edwards</u>, 39 Colo. App. at 236, 563 P.2d at 980. The plaintiff filed suit, contending the "assessment for district taxes was a 'defect in or lien or encumbrance on the title' " rendering the defendants liable under the policy. <u>Edwards</u>, 39 Colo. App. at 236, 563 P.2d at 980.

The Colorado Court of Appeals found no basis to hold the title insurer liable. <u>Edwards</u>, 39 Colo. App. at 237, 563 P.2d at 980. The court reasoned that "in 1967, when [the plaintiff] purchased [the] property and the policy was issued, there were no district taxes or assessments due or payable or certified to the treasurer's office, and thus there was obviously no lien against

23

1-09-1216

the property for such taxes." Edwards, 39 Colo. App. at 237, 563 P.2d at 980. Those taxes, which were "certified and levied two years after the date of the policy," did not fall within its coverage because "the mere existence of the [water and sanitation] district and the prospect of taxes in the future was not a lien, encumbrance, or defect as of the date of issuance of the policy." Edwards, 39 Colo. App. at 237, 563 P.2d at 980. The court expressly noted that the title insurance company "did not contract to indemnify [the plaintiff] against loss due to district taxes or assessments to be levied against his property after the date of the policy." Edwards, 39 Colo. App. at 237, 563 P.2d at 981. The court affirmed summary judgment in the title insurer's favor.

Against these cited authorities, the Rhones present us with no authority addressing the scope of the term encumbrance in a title insurance policy, which supports their position. We agree with the assertions in both the Butcher and Edwards decisions: although the term "encumbrance" includes a tax lien, it does not include the mere prospect of future taxes. Butcher, 52 Mich. App. at 102, 216 N.W.2d at 436; Edwards, 39 Colo. App. at 237, 563 P.2d at 980.

A property tax bill arising from a reassessment is a tax lien in the year the tax is levied pursuant to the Tax Code; the

24

previously unassessed taxes do not constitute an encumbrance prior to acquiring the status of a tax lien. In other words, the prospect of a future tax lien does not give rise to an encumbrance on the title before the tax is levied. Butcher, 52 Mich. App. at 101-02, 216 N.W.2d at 436. To be clear, unassessed property taxes cannot constitute an encumbrance on title at any point before the tax is levied pursuant to statute, at which point the tax constitutes both a lien and an encumbrance, as each term is used in a title insurance policy. Put another way, a title insurance policy " 'operates to protect *** against defects in or incumbrances on a title existing at the date of such insurance.' " Butcher, 52 Mich. App. at 102, 216 N.W.2d at 436, quoting Mayers, 268 N.Y. at 323, 197 N.E. at 297.

The Rhones had knowledge that the townhome had been wrongly assessed as vacant land from 2004 to 2006. They protected themselves against any additional taxes due in 2006 in the event of a reassessment of the property as improved land. The Rhones properly concluded that the sellers should bear their share of any additional taxes due for 2006 while the sellers were owners. It would have been a simple matter to have altered the proration agreement to include the sellers' liability for additional taxes based on that very same reassessment for tax years 2004 and 2005 when the sellers resided in the townhome. Yet, inexplicably, the

25

Rhones did not.  To paraphrase the New York case quoted in the Michigan case, First American no more agreed with the Rhones to protect them against liability for the unpaid assessment in question than it undertook to indemnify the Rhones for taxes to be levied against the premises after delivery of the policy. Butcher, 52 Mich. App. at 101, 216 N.W.2d at 436, quoting Mayers, 268 N.Y. at 324, 197 N.E. at 298.  Because the unassessed taxes in this case became liens and encumbrances only after the Rhones' title insurance policy was issued, the unassessed taxes were not defects of title covered by the Rhones' title insurance policy.

We hold the unassessed taxes for 2004 and 2005 were neither liens nor encumbrances on or before August 31, 2006, when the title insurance policy was issued.  Therefore, First American cannot be held liable for their payment.  Based on our holding, we do not address First American's fallback contention that the unassessed taxes are excluded from coverage by any of the special exclusions or exceptions of the policy.

Special Damages

Because we hold that the potential unassessed taxes did not constitute a covered encumbrance under the Rhones' title insurance policy, the Rhones' claim does not fall within the policy.  Where the policy is not triggered, there can be no finding that the insurer acted vexatiously and unreasonably in

denying the claim.  <u>Westchester Fire Insurance Co. v. G. Heileman Brewing Co.</u>, 321 Ill. App. 3d 622, 638, 747 N.E.2d 955 (2001). We affirm summary judgment on count II, seeking special damages against First American.

CONCLUSION

First American issued an insurance policy to the Rhones that covered "[a]ny defect in or lien or encumbrance on the title" to the townhome as of the date it was issued, August 31, 2006.  It was not until the Rhones were billed in February 2008 for the omitted assessment taxes covering tax years 2004 and 2005, that the unassessed taxes obtained lien status by operation of the Tax Code.  No separate and distinct encumbrance arose based on the unassessed taxes prior to the issuance of the tax bill due in 2008.  The unassessed taxes were not covered by the Rhones' 2006 title insurance policy.  We affirm Judge Riley's summary judgment order in all respects.

Affirmed.

PATTI, J., concurs.

LAMPKIN, J., concurs in part and dissents in part.

27

JUSTICE LAMPKIN, concurring in part and dissenting in part:

I agree, but for different reasons, that the circuit court correctly granted summary judgment in favor of First American on the Rhones' claim for special damages under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2008)). However, I disagree with the majority's conclusion that the unassessed property taxes for the years 2004 and 2005 did not constitute encumbrances until the tax bills were issued in 2008. In my view, the majority fails to decide this dispute according to the terms of the parties' contract, *i.e.*, the title insurance policy, and then misapplies Illinois precedent concerning what constitutes an encumbrance. The interpretation of the terms of that contract, rather than the Property Tax Code (Tax Code) (35 ILCS 200/1-1 *et seq.* (West 2008)), should determine the outcome of this dispute. I conclude that the title insurance policy issued to the Rhones covers the 2004 and 2005 back taxes, which constituted encumbrances when the policy was issued.

There is no dispute that, prior to the real estate closing on August 31, 2006, both the buyers and sellers had notice that the condominium was improperly assessed and being taxed as vacant land. Specifically, on August 14, 2006, the Rhones, through their attorney, wrote the sellers' attorney, Kent Novit, who also served as First American's issuing agent for the title insurance

28

policy issued to the Rhones. The Rhones requested several modifications to the parties' real estate sales contract. The Rhones asked, *inter alia*, that paragraph 5 concerning the deed be modified to strike language allowing the sellers to deliver a warranty deed subject to any "special taxes or assessments." The Rhones requested that the "deed should also be subject to real estate taxes for only 2006 taxes, not 2003 and subsequent years." Furthermore, the Rhones attached a data sheet from the Cook County assessor's Web site, which showed the condominium was being taxed as vacant land and a neighboring, comparable property was correctly assessed in 2005 for nearly $9,000 more in property taxes. The Rhones suggested that the tax proration be based upon 110% of the most recent ascertainable tax bill for a correctly taxed neighboring unit of comparable value.

At the real estate closing, the Rhones and the sellers entered into a tax reproration agreement that addressed the 2006 taxes only; it did not address the potential back taxes or any other taxes for any year before 2006. Under that agreement, if the condominium was assessed as vacant property for the 2006 tax year, the Rhones would pay the tax bill but Novit would hold $10,000 from the sellers in escrow. If the property was reassessed properly as improved property before March 31, 2008, the escrow would be applied toward any additional taxes for 2006.

The First American title insurance policy issued to the Rhones on August 31, 2006, listed Novit & Novit as the issuing agent on schedules A and B of the policy. The policy generally insured the Rhones against losses caused by "[a]ny defect in or lien or encumbrance on the title," subject to the specified limitations on coverage. The policy listed five standard exceptions to coverage, including one noting that the policy provided no coverage for "[t]axes, or special assessments which are not shown as existing liens by the public records." First American, however, signed an endorsement that deleted the five standard exceptions from the policy.

A special exception stated that the policy did not insure against loss or damage which arose by reason of "[g]eneral taxes for the year, [*sic*] 2006 and subsequent years which are not yet due and payable." Relevant to this appeal, the policy also expressly excluded from coverage:

"3. Defects, liens, encumbrances, adverse claims
or other matters:

(a) created, suffered, assumed or agreed to
by the [Rhones];

(b) not known to [First American], not
recorded in the public records at Date of Policy, but
known to the [Rhones] and not disclosed in writing to

30

[First American] by the [Rhones] prior to the date the [Rhones] became an insured under this policy;

  ***

  (d) attaching or created subsequent to Date of Policy."

The majority undertakes a broad analysis that encompasses issues of statutory interpretation of the Tax Code, the levying of property taxes, and policy considerations. This case, however, does not hinge upon the status of back taxes as liens or encumbrances under the terms of the Tax Code. Rather, the dispositive issue here is whether the Rhones' claim for back taxes was covered under the terms of their contract with First American.

 "The interpretation of a party's agreement is a question of law to be determined by the appellate court *de novo*. [Citation.] Whether a contract is clear or ambiguous also is a question of law for the court. [Citation.] When interpreting a contract, the primary objective is to give effect to the parties' intentions. [Citation.] If a contract is clear and unambiguous, the court must determine the intent of the parties solely from the plain language of the contract. [Citation.] However, where the contract is ambiguous,

31

evidence outside the document may be considered to discern the parties' intent. [Citation.] The meaning of the contract can be determined by the court as a matter of law if the parties' intent may be determined from undisputed facts. [Citation.]" C.A.M. Affiliates, Inc. v. First American Title Insurance Co., 306 Ill. App. 3d 1015, 1020 (1999).

Moreover, it has been consistently held that any ambiguity or inconsistent or conflicting provisions in insurance contracts must be construed in favor of granting coverage to the insured. National Discount Shoes, Inc. v. Royal Globe Insurance Co., 99 Ill. App. 3d 54, 60 (1981).

The content of the contract concerning the standard exceptions, special exception and exclusions is not ambiguous. The plain language of the contract establishes that the Rhones are covered for encumbrances on the title unless an exception or exclusion listed in the policy applies. Although the contract does not define the term *encumbrance*, this court has recognized that encumbrances may include broad categories of inchoate rights that cloud title, including potential back taxes even if they have not yet obtained statutory lien status. Inland Real Estate Corp., 127 Ill. App. 3d at 541 (holding that if the assessment of back taxes was lawful and enforceable, the unexercised authority

of the county assessor to impose back taxes constituted an encumbrance on the property at the time of transfer).  The majority attempts to detract from Inland's relevance to the present case by characterizing Inland's holding and analysis as mere *dictum* entitled to little weight.  Contrary to the majority's characterization, Inland's discussion concerning unassessed back taxes constituting encumbrances was neither *obiter dictum* nor judicial *dictum* because it was necessary to the decision in the case and therefore precedential.  See Lebron v. Gottlieb Memorial Hospital, Nos. 105741, 105745 cons., slip op. at 12-13 (Ill. February 4, 2010) (*obiter dictum* is not essential to the outcome of the case, not an integral part of the opinion and generally not binding authority or precedent within the *stare decisis* rule; judicial *dictum*, which is entitled to much weight and should be followed unless found to be erroneous, expresses an opinion upon a point in a case argued by counsel and deliberately passed upon by the court, though not essential to the disposition of the cause).  In Inland, there would have been no reason for this court to remand the cause for a fact determination on whether the buyers had notice of the back taxes unless this court had determined that the county's unexercised authority to impose the back taxes constituted an encumbrance.  Inland Real Estate Corp., 127 Ill. App. 3d at 541-45.

33

The majority also asserts that <u>Inland</u>'s holding should not extend beyond its facts because the question before the <u>Inland</u> court was a narrow one. According to the majority, the guarantee in <u>Inland</u> to convey clear title is a far cry from an expressly limited insurance policy protecting against title risks as of the date of its issuance. Although I do not agree with the majority's characterization of <u>Inland</u>, even assuming, *arguendo*, that the <u>Inland</u> court addressed a narrow question, the issue here is certainly narrower where this court is called upon to simply construe and apply the terms of the parties' contract.

The majority's reliance on foreign precedent is problematic. Specifically, the <u>Edwards</u> case from Colorado is readily distinguishable. In <u>Edwards</u>, the defendant title insurance company issued a policy in 1967 to the plaintiff property owner but did not mention that the property was situated within a water and sanitation district (district), which had been formed in 1965. <u>Edwards</u>, 39 Colo. App. at 236, 563 P.2d at 980. The district first levied *ad valorem* taxes against the owner's property in 1969 and 1970, and the owner sued the title insurance company, claiming that inclusion in the district and the consequent taxes was a defect in or lien or encumbrance on the title. <u>Edwards</u>, 39 Colo. App. at 236, 563 P.2d at 980. The court found no basis for liability because there were no district

taxes or assessments due or payable when the policy was issued. Edwards, 39 Colo. App. at 236, 563 P.2d at 980. The court reasoned that "the mere existence of the district and the prospect of taxes in the future" was not an encumbrance, and there was "nothing in the record to show any foreseeable challenge" to the owner's title. Edwards, 39 Colo. App. at 237, 563 P.2d at 980-81. Here, in contrast, the Rhones' claim under their policy did not involve the mere prospect of future taxes being levied by a taxing authority. Rather, the Rhones' claim involved back taxes, and the public records revealed that those back taxes were a foreseeable encumbrance on the Rhones' title.

I do not find the majority's reliance on the Butcher case from Michigan to be persuasive. The Butcher court referred to the trial court's "thorough, scholarly, 17-page opinion," and agreed with its decision to grant the title insurance company's motion for summary judgment. Butcher, 52 Mich. App. at 101, 216 N.W.2d at 436. The Butcher court then characterized the plaintiffs' claims of encumbrances on their title "as either special assessments (the connection charges and possibly the ad valorem sewer taxes) or prospective general ad valorem taxes (the school taxes and the ad valorem sewer taxes)." Butcher, 52 Mich. App. at 101, 216 N.W.2d at 436. The Butcher court summarily concludes that "a special assessment does not become an

35

encumbrance until it has achieved lien status," and "*ad valorem* taxes not yet due are not \*\*\* encumbrances within the meaning of a title insurance policy" (Butcher, 52 Mich. App. at 101-02, 216 N.W.2d at 436), but the court offers sparse analysis to support those conclusions. I see no reason to abandon this court's more recent and thorough analysis in Inland for that of Butcher.

Inland is relevant to the present case. Just as the seller in Inland promised to convey title to the property free and clear of all encumbrances (Inland Real Estate Corp., 127 Ill. App. 3d at 537), First American's title insurance policy assured the Rhones that the condominium was free from any "encumbrance on the title." Although the promise in Inland arose in the context of a warranty deed, whereas the promise here arose in the context of title insurance, both related to an encumbrance on title. There is no valid reason to apply a different definition of the term *encumbrance* to real estate sales contracts versus contracts for title insurance. In each case, the property was transferred in reliance upon a promise that there were no clouds upon title despite the fact that the county tax assessor maintained the unexercised authority to impose back taxes based upon previously omitted assessments. Inland Real Estate Corp., 127 Ill. App. 3d at 541. Although those back taxes were not levied against the buyers in each case for several years, that unexercised authority

36

" 'diminishe[d] the value' " of the property and, if the taxes could validly be assessed against the buyers, constituted an encumbrance on title. Village of Buffalo, 180 Ill. App. 3d at 597, quoting Monti, 99 Ill. App. 3d at 581. The record establishes and the majority acknowledges that the taxes for 2004 and 2005 could validly be assessed against the Rhones because they had notice when they purchased the condominium that it was improperly assessed in those years as vacant property.

The majority speculates that the Rhones' knowledge of the possibility of back taxing for 2004 and 2005 "spurred" them to enter into the tax reproration agreement with the sellers, yet the majority wonders why the Rhones "inexplicably" did not require the sellers to escrow additional money to cover the 2004 and 2005 taxes in addition to the 2006 taxes. The majority, however, overlooks the fact that this condominium sale was accomplished not only by utilizing the tax reproration agreement to cover the future bill for the 2006 taxes, but also by obtaining a title insurance policy that waived its exclusions for the back taxes. The record indicates that any concerns about the possibility of back taxes for 2004 and 2005 were addressed by First American's endorsement of the provision that deleted the standard exception for taxes and special assessments not shown as existing liens by the public records.

The Rhones have explained that the reproration agreement addressed only the 2006 taxes because those taxes were straightforward. Moreover, the Rhones thought they would be considered good-faith purchasers under section 9-270 of the Tax Code (35 ILCS 200/9-270 (West 2008)) and, thus, not subject to any back taxes. It was not until the Rhones contacted the assessor after the closing (so that their future property taxes would be properly assessed) that they learned the assessor relied on Inland for the proposition that a purchaser's notice of an improper assessment constituted notice of the tax.

Furthermore, the Rhones had requested modifications to the terms of the parties' sales contract so that the sellers would convey title subject to taxes for only 2006 and subsequent years. The sellers came to the closing with a title insurance policy that (1) deleted the exception for taxes not shown as existing liens by the public records, and (2) limited the special exception for general taxes to the year 2006 and thereafter. The Rhones reasonably relied on those provisions in the title insurance policy as evidence that First American accepted the risk of the possibility of back taxes by insuring over that defect in title.

Because the back taxes were an encumbrance on title when the policy was issued, it is necessary to address First American's

38

arguments that the policy's terms specifically excluded such taxes from coverage.

Initially, First American contends the potential back taxes were not covered because the policy listed a special exception, which noted that it did not insure against a loss or damage which arose by reason of "[g]eneral taxes for the year, [*sic*] 2006 and subsequent years which are not yet due and payable."  First American's argument lacks merit because the timing of the levying of the taxes by the assessor is not relevant to this exception as drafted in the parties' contract.  Although the taxes at issue here were not due and payable until they were assessed and a tax bill was issued in 2008, there is a distinction between the year *in* which taxes are assessed and the year *for* which taxes are assessed.  The special exception did not exclude general taxes that were assessed or levied *in* 2006 and subsequent years.  Rather, the plain language of the insurance policy excluded taxes only *for* the year 2006 and subsequent years.  The back taxes at issue here definitely were not *for* 2006 and after because they were *for* the years 2004 and 2005.  Consequently, the special exception did not exclude coverage for the back taxes.

Next, First American contends that exclusion 3(a) in the policy, which excludes coverage for encumbrances assumed by the Rhones, applied to the potential back taxes.  First American

39

argues the Rhones assumed the encumbrance because they voluntarily gave Cook County notice that the property was improperly taxed as vacant land and then paid the bill for the 2004 and 2005 back taxes. First American asserts the Rhones were protected from that debt as good-faith purchasers under section 9-270 of the Tax Code (35 ILCS 200/9-270 (West 2008)). This argument lacks merit. As stated above, the taxes for 2004 and 2005 could validly be assessed against the Rhones because they had notice when they purchased the condominium that it was improperly assessed in those years as vacant property. Consequently, the Rhones' claim for coverage is not defeated by exclusion 3(a) of the policy.

Next, First American contends that exclusion 3(b) in the policy applied to the potential back taxes. Exclusion 3(b) stated that First American did not provide coverage for defects, liens or encumbrances "not known to [First American], not recorded in the public records at Date of Policy, but known to the [Rhones] and not disclosed in writing to [First American] by the [Rhones] prior to the date the [Rhones] became an insured under this policy." This exclusion is not applicable. First American knew or should have known as much about the tax discrepancy as the Rhones, who knew the property taxes assessed on the condominium in the previous years were unusually low for

developed property located in that neighborhood.  See Inland Real Estate Corp., 127 Ill. App. 3d at 546 (abnormally low taxes for the neighborhood in which a property was located or for the level of improvement on the property could constitute notice of the possibility of a back tax); McLaughlin, 61 Ill. App. 3d at 916 (the insurer has a duty to search the records and examine the applicable law before issuing its commitment or policy, which must be predicated upon a careful examination of the documentary evidence of title and the exercise of expert contract draftsmanship).  Furthermore, the tax discrepancy was easily determinable through the public records where the Cook County assessor's website revealed that the condominium was assessed as vacant land.  Moreover, the Rhones disclosed the encumbrance to First American in writing prior to the issuance of the policy when their attorney sent the August 14, 2006 letter to Novit, who was First American's issuing agent.  See McLaughlin, 61 Ill. App. 3d at 917 (where the commitment for title insurance was issued to the plaintiffs by the insurer through its agent, notice to the agent was imputed to an insurer).  Because the encumbrance was disclosed in writing to First American, exclusion 3(b) did not apply and the potential back taxes were a covered encumbrance.

First American complains the Rhones failed to establish any agency relationship between Novit and First American because

Novit was never deposed to establish the scope of his authority and no agency contract between Novit and First American was submitted into the record. First American's arguments concerning agency lack merit.

Notice to or knowledge of an agent, while acting within the scope of his authority and with respect to a matter over which his authority extends, is notice to a principal. Mitchell Buick & Oldsmobile Sales, Inc. v. National Dealer Services, Inc., 138 Ill. App. 3d 574, 582 (1985). The party asserting the agency relationship has the burden of proving the agency's existence by a preponderance of the evidence. FDL Foods, Inc. v. Kokesch Trucking, Inc., 233 Ill. App. 3d 245, 256 (1992). Although the existence and scope of an agency relationship are generally questions of fact, a court may decide the issue if the relationship is so clear as to be undisputed. C.A.M. Affiliates, Inc., 306 Ill. App. 3d at 1021. An agent's authority may be either actual or apparent. FDL Foods, Inc., 233 Ill. App. 3d at 256. Whereas actual authority may be granted either expressly or impliedly (FDL Foods, Inc., 233 Ill. App. 3d at 256), apparent authority exists in a person who, whether authorized or not, reasonably appears to third persons, because of the acts of another, to be authorized to act as the agent for such other person (Mitchell Buick & Oldsmobile Sales, Inc., 138 Ill. App. 3d

42

at 582).  The authority of an agent, whether actual or apparent, can only be established by the words or conduct of the alleged principal, not the alleged agent.  First American Title Insurance Co. v. TCF Bank, F.A., 286 Ill. App. 3d 268, 274 (1997).

First American's relationship with Novit is so clear that this court may decide the issue.  Title insurance companies commonly contract with title insurance agents to sell their title insurance.  In this case, the record establishes that the Rhones reasonably believed Novit possessed apparent authority to act as First American's agent because First American held itself out to the public as providing title insurance services through issuing agents.  Here, First American signed the Rhones' title policy, which listed Novit & Novit as First American's "issuing agent." The ordinary meaning of the words "issuing agent" reasonably conveyed to the Rhones that First American had authorized Novit as its agent to issue title insurance policies on its behalf. Furthermore, the record indicates that the only contact the Rhones or their attorney had with First American prior to issuance of the title insurance policy was through First American's issuing agent Novit.  Consequently, notice to Novit was notice to First American, and the Rhones therefore gave notice to First American prior to the closing about the omitted taxes for 2004 and 2005.

43

Finally, First American contends exclusion 3(d) applied to the potential back taxes.  Exclusion 3(d) stated that the policy did not apply to defects, liens or encumbrances "attaching or created subsequent to Date of Policy."  First American reiterates the argument that the back taxes did not become a statutory lien until they were included in the 2008 tax bill, which was well after the policy was issued in 2006.  However, as explained above, Inland, which is relevant precedent here, held that the potential for the county assessor to impose a lawful claim for back taxes constituted an encumbrance on the property "at the time of transfer" from the seller to the buyer.  Inland Real Estate Corp., 127 Ill. App. 3d at 541.  The insurance policy therefore covered that encumbrance, and exclusion 3(d) did not apply.

Because the potential back taxes constituted a covered encumbrance under the Rhones' title insurance policy, I would reverse the circuit court's grant of summary judgment on count I in First American's favor and remand with directions to enter summary judgment for the Rhones on that count.  First American complains this decision would chill sales because title insurers would be forced to conduct open-ended searches to discover any potential property tax that could ever be assessed.  I disagree. If First American wished to place the burden of potential back

44

taxes on the Rhones, it simply should have refrained from endorsing away the standard exception that excluded taxes or special assessments that are not shown as existing liens by the public records. Alternatively, First American could have modified the policy's terms to exclude coverage for potential back taxes when it learned that the condominium was improperly assessed for years prior to closing. Such precautionary steps are not so onerous as to chill the issuance of title insurance policies or the sale of real estate.

Although I would reverse the circuit court's order concerning count I, I would affirm the circuit court's order in favor of First American on count II of the Rhones' complaint. In count II, the Rhones argued they were entitled to special damages under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2008)) because First American's denial of their claim under their title insurance policy was vexatious and unreasonable.

Although the granting of section 155 attorney fees and penalties is usually entrusted to the sound discretion of the trial court (Meier v. Aetna Life & Casualty Standard Fire Insurance Co., 149 Ill. App. 3d 932, 940 (1986)), the awarding of section 155 fees and penalties as a judgment on the pleadings is reviewed *de novo* (Employers Insurance of Wausau v. Ehlco Liquidating Trust, 186 Ill. 2d 127, 160 (1999)).

45

The question of whether the insurer's acts are unreasonable and vexatious is one of fact. Green v. International Insurance Co., 238 Ill. App. 3d 929, 935 (1992). A court may award reasonable attorney fees and other costs for a vexatious and unreasonable action by a company where there is an issue of the liability of a company on an insurance policy or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim. 215 ILCS 5/155 (West 2008). A court should consider the totality of the circumstances when deciding whether an insurer's conduct is vexatious and unreasonable, including the insurer's attitude, whether the insured was forced to sue to recover, and whether the insured was deprived of the use of his property. McGee v. State Farm Fire & Casualty Co., 315 Ill. App. 3d 673, 681 (2000). If a *bona fide* coverage dispute exists, an insurer's delay in settling a claim will not be deemed vexatious or unreasonable for purposes of section 155 sanctions. Baxter International, Inc. v. American Guarantee & Liability Insurance Co., 369 Ill. App. 3d 700, 710 (2006).

Section 155 fees are not automatically awarded simply because an insurer fails to prove its coverage position. Mohr v. Dix Mutual County Fire Insurance Co., 143 Ill. App. 3d 989, 999 (1986). The record here is silent on the circuit court's specific findings concerning the Rhones' claim for section 155

46

fees.  Nevertheless, the Rhones have not met their burden to prove that First American acted with improper intent in refusing payment, and the record indicates that First American did have a *bona fide* coverage dispute.  In considering the totality of the circumstances, the court could reasonably conclude that First American's denial of the Rhones' claim was not unreasonable or vexatious.

## REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

RAY H. RHONE and DENISE RHONE,

Plaintiffs-Appellants,

v.

FIRST AMERICAN TITLE INSURANCE CO.,
a California Corporation,

Defendant-Appellee.

### No. 1-09-1216

**Appellate Court of Illinois**
**First District, First Division**

**Filed: May 17, 2010**

### JUSTICE GARCIA delivered the opinion of the court.

**PATTI, J., concurs.**
**LAMPKIN, J., concurs in part and dissents in part.**

**Appeal from the Circuit Court of Cook County**
**Honorable Daniel A. Riley, Judge Presiding**

| | |
|---|---|
| **For PLAINTIFFS-**<br>**APPELLANTS** | **Michael J. Sreenan**<br>**853 North Elston Avenue**<br>**Chicago, Illinois  60622** |
| **For DEFENDANT-**<br>**APPELLEE** | **Jeffrey D. Corso**<br>**Cooney & Corso, LLC**<br>**4925 Indiana Avenue, Suite 101**<br>**Lisle, Illinois 60532** |

1-09-1216